James H. Power, Esq.
Barbra R. Parlin, Esq.
Warren E. Gluck, Esq.
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone:  212-513-3200
Telefax: 212-385-9010
Email:  james.power@hklaw.com
      barbra.parlin@hklaw.com
      warren.gluck@hklaw.com

*Counsel for the Joint Liquidators of*
*Transfield ER Cape Limited (BVI)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 15 |
| | : | |
| TRANSFIELD ER CAPE LIMITED (BVI), | : | Case No. 10-_____ (___) |
| | : | |
| Debtor in a | : | |
| Foreign Proceeding. | : | |
| | : | |
| | : | |

--------------------------------------------------------x

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN INSOLVENCY PROCEEDING AND APPLICATION FOR RELATED PROVISIONAL RELIEF PURSUANT TO SECTIONS 1504, 1507, 1509, 1515, 1517, 1519, 1520 AND 1521 OF THE BANKRUPTCY CODE**

Casey McDonald, Bob Yap Cheng Ghee and Patrick Cowley, duly appointed Joint Liquidators and foreign representatives ("Petitioners" or "Joint Liquidators") of Transfield ER Cape Limited (BVI) ("TERC" or the "Foreign Debtor"), a company undergoing liquidation before the Commercial Division of the High Court of Justice (the "BVI Court"), case number BVIHCV2010/21 (the "BVI Liquidation"), pursuant to the Insolvency Act of 2003 of the British Virgin Islands (the "2003 Act"), by their undersigned United States counsel, Holland & Knight LLP, respectfully submit the Official Form Petition and exhibits thereto, this Verified Petition

(together, the "Petition"), the accompanying Declaration of Casey McDonald executed on November 19, 2010 (the "McDonald Declaration"), the Declaration of Sandie Corbett, executed on November 19, 2010 (the "Corbett Declaration"), and the Declaration of James H. Power, executed on November 19, 2010 (the "Power Declaration"), for entry of an Order pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. 101 *et seq.* (the "Bankruptcy Code"):

(i) recognizing the BVI Liquidation of TERC as a foreign main proceeding, or in the alternative, a foreign non-main proceeding pursuant to chapter 15 of the Bankruptcy Code and the Joint Liquidators as TERC's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code;

(ii) granting automatic relief pursuant to section 1520 of the Bankruptcy Code;

(iii) granting other and additional relief pursuant to sections 1507 and 1521(a) and (b) of the Bankruptcy Code; and

(iv) pending recognition, issuing an order to show cause and granting provisional relief pursuant to sections 105(a) and 1519 of the Bankruptcy Code in the form of a stay of the U.S. Actions (defined below), and enjoining creditors from utilizing any judicial or administrative process to execute, restrain or encumber TERC's assets or otherwise take or continue any action against the Foreign Debtor of the Petitioner.

## PRELIMINARY STATEMENT

1.      This Court previously has noted that "[u]nique to the Bankruptcy Code," chapter 15 contains a statement of purpose: "'to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency.'" *In re*

*Bear Stearns High-Grade Structured Credit Strategies Master Fund Ltd.*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007) (quoting 11 U.S.C. § 1501), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008). Among the express objectives of chapter 15 is to promote the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor . . ." 11 U.S.C. § 1501(a)(3).

2.      Petitioners request recognition of the BVI Liquidation as a foreign main proceeding primarily to obtain this Court's assistance in enforcing the automatic stay of proceedings that came into effect, under BVI law (the 2003 Act)[1], when the BVI Liquidation was ordered by the BVI Court. Despite the BVI stay, five of TERC's creditors have continued with pending suits against TERC in the United States in the Supreme Court, New York County, and in the District Court for the Southern District of New York (the "U.S. Actions").

3.      Two creditors have obtained maritime attachments of property of TERC in the amount of $866,377.36. Pursuant to the New York Court of Appeals' decision in *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 539 (2009), two other creditors have threatened to restrain and/or execute upon the assets of TERC located outside of the United States that are under the control of the Joint Liquidators and the BVI Court.

4.      Recognition of the BVI Liquidation as a foreign main proceeding would confer upon TERC the protection of sections 362 and 1520 of the Bankruptcy Code, thereby preventing one creditor from gaining an advantage over similarly situated creditors and preventing one creditor from otherwise interfering with the BVI Liquidation of the TERC estate.

5.      As this Petition and the accompanying Declarations amply demonstrate, the BVI Liquidation should properly be recognized as a foreign main proceeding. In the event that the BVI Liquidation is recognized as a non-main proceeding, this Court has the discretion to order

---

[1] Excepts of the relevant provisions of the 2003 Act are attached as Ex. 1 to the Corbett Declaration.

whatever protections it deems appropriate pursuant to sections 1507 and 1521 of the Bankruptcy Code - including enforcing the BVI stay - so as to prevent these same harms.

6.      To prevent irreparable harm to TERC and the BVI Liquidation process pending recognition, Petitioners also seek provisional relief in the form of an order staying the commencement or continuation of actions and proceedings against Petitioners, TERC, or TERC's assets, including the pending U.S. Actions.

7.      Petitioners seek precisely the type of relief that chapter 15 was designed to provide, while the BVI Liquidation and this Petition meet all the requirements for recognition and provisional relief. In particular, Petitioners were appointed by the BVI Court to administer TERC's assets, liabilities, and ongoing business in connection with the BVI Court-ordered Liquidation of TERC pursuant to the 2003 Act, a law relating to insolvency or adjustment of debt.

8.      Likewise, the BVI Liquidation is a collective judicial proceeding, subject to the direct control of the BVI Court, encompassing all creditors and stakeholders of TERC, pending in the British Virgin Islands, the foreign country in which the Foreign Debtor was incorporated, maintains its center of main interests and where TERC is engaged in non-transient economic activity.

9.      Pursuant to section 1516(c), the British Virgin Islands are presumed to be TERC's center of main interests because TERC was incorporated there and maintains its registered office there. This Petition and the accompanying Declarations further demonstrate that TERC's counterparties and creditors had clear and actual knowledge that TERC was a BVI entity. Since the commencement of the BVI Liquidation, the BVI has been the obvious and demonstrable "nerve center" of TERC's ongoing operations, assets and liquidation. Hence, the BVI

Liquidation is a "foreign main proceeding" within the meaning of sections 101(23), 1502(4), 1516(c), and 1517(b)(1) of the Bankruptcy Code.

10.    On November 1, 2010, the English High Court of Justice, Chancery Division, issued an order recognizing the BVI Liquidation as a foreign main proceeding pursuant to the British statute implementing the Model Law on Cross-Border Insolvency, the Cross Border Insolvency Regulations of 2006. This British analogue to chapter 15 defines "foreign main proceeding" and "center of main interests" substantially as chapter 15 of the US Bankruptcy Code does. Moreover, this Court recently entered an order recognizing a similar BVI liquidation proceeding. *See In re Fairfield Sentry Ltd.,* 10-13164, 2010 WL 4455879 (Bankr. S.D.N.Y. July 22, 2010) (recognizing the BVI liquidations of various BVI financial entities as foreign main proceedings upon the application of the joint liquidators of those entities); *see also In re Grand Prix Assocs., Inc.,* No. 09-16545 (DHS), 2009 WL 1410519 (Bankr. D.N.J. May 18, 2009) (recognizing BVI liquidation as foreign main proceeding); *In re Saad Invs. Fin.Co. (No. 5) Ltd.,* No. 09-13985 (KG) (Bankr. D. Del. December 17, 2009) (recognizing Cayman Islands liquidation as foreign main proceeding).[2]

11.    For all of these reasons and as will be shown below, Petitioner respectfully submits that: (i) recognition of the BVI Liquidation would not be contrary to public policy under Bankruptcy Code section 1506; (ii) the BVI Liquidation is a foreign main proceeding within the meaning of sections 101(23) and 1502(4); and (iii) Petitioners are a duly appointed foreign representative of TERC within the meaning of section 101(24); and (iv) Petitioners and the Petition comply with all the requirements of section 1515 and Bankruptcy Rule 1007(a)(4). Under the circumstances, this Court should enter an order recognizing the BVI Liquidation as a foreign main proceeding under section 1517(b)(1), or in the alternative, as a foreign non-main

---

[2] Copies of these opinions and orders are attached hereto as Ex. D for the Court's convenience.

proceeding under section 1517(b)(2) of the Bankruptcy Code, and granting appropriate relief as set forth in sections 1507, 1520 and 1521 of the Bankruptcy Code.

12. Finally, as will be demonstrated below, this Petition and the facts of this case satisfy the criteria for provisional relief as set forth in section 1519(e). Specifically, Petitioners can demonstrate that irreparable harm may occur absent a stay, there is a likelihood of success that the recognition application will be granted, and the equities weigh decidedly in favor of granting provisional relief here.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and sections 109 and 1501 of the Bankruptcy Code.

14. Venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1410 because the principal U.S. Assets (as defined below) of TERC are located within this judicial district and there are actions pending against TERC within this judicial district.

15. This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

## FACTUAL BACKGROUND

### TERC'S Business

16. TERC was incorporated under the laws of the British Virgin Islands on May 22, 2003. McDonald Declaration ¶ 11. TERC's registered office is at TrustNet (BVI) Ltd. ("Trustnet"), TrustNet Chambers, P.O. Box 3444, Road Town, Tortola, British Virgin Islands. *Id.*, ¶ 11 and Ex. 2 (copies of TERC's memorandum and articles of association and certificate of incorporation).

17. TERC is a time-charter operator of bulk cargo ships and was a major player in the world-wide transportation of bulk commodities such as iron, coal and steel. In 2007, during the

6

height of the global commodities boom, TERC maintained in excess of 200 vessels under charter. *Id.* ¶ 12.

18.     In 2008, the market for transportation of bulk cargo suffered a dramatic collapse as a result of the global economic downturn. At that time, the Baltic Dry Index, which measures average global freight prices for the transportation of bulk goods, collapsed, and the price of carrying bulk goods and the demand for carriage of bulk goods dropped significantly. As a result, TERC's profitability deteriorated from late-2008 onwards. *Id.* ¶ 13.

19.     TERC's counterparties consist of a broad swath of internationally-based ship owners, commodity traders, cargo shippers and other time-charter operators similar to TERC. A number of these time-charter operators, including Britannia Bulk PLC, Britannia Bulkers A/S, and Armada (Singapore) Pte Ltd., faced similar financial difficulties that ultimately led to insolvency proceedings in their home jurisdictions and the filing of chapter 15 proceedings in this district.[3] Insolvency proceedings were commenced with respect to these entities in their home jurisdictions, which proceedings were recognized as foreign-main proceedings in the United States pursuant to chapter 15. One consequence of these matters was that TERC was unable to collect approximately $175 million that was owed to it. *Id.* ¶ 14.

20.     TERC's business has always been a "paper business." TERC never actually owned vessels, but rather chartered them from owners or a disponent owner (before sub-chartering them out). TERC has never owned any physical assets in any location. *Id.* ¶ 15.

21.     TERC is now insolvent on a cash flow and balance sheet basis. *Id.* ¶ 16 and Ex. 3 (copies of financial statements prepared by TERC (pre-liquidation) and Petitioners' staff (post-liquidation) (collectively, the "Financial Statements").

---

[3] *See In re Britannia Bulkers A/S,* No. 08-15187 (REG) (Bankr. S.D.N.Y. 2009); *In re Armada (Singapore) Pte Ltd.,* No. 09-10105 (JMP) (Bankr. S.D.N.Y. 2009); *In re Britannia Bulk Plc,* No. 08-14543 (REG) (Bankr. S.D.N.Y. 2008).

22.     According to the Financial Statements, TERC presently maintains assets of approximately $273,121,039 and liabilities of $432,029,531. Petitioners' staff has preliminarily investigated these reported assets and liabilities and arrived at substantially reduced estimated realization figures for both. *Id.* ¶ 17.

23.     A large portion of TERC's assets consists of claims against third parties, while the remainder consists of *inter alia*, bank balances in the BVI under the control of the Petitioners, approximately $33 million in future profits (contingent receivables) pursuant to ongoing time charters through 2013, and funds in the United States that are restrained pursuant to maritime attachment orders (and in jeopardy of additional and further restraint). *Id.* ¶ 18.

### The TERC Liquidation and BVI Insolvency Law

24.     On September 3, 2010, a creditor of TERC, TMT Bulk Corporation, trading as TMT Bulk Co. Ltd. ("TMT"), applied to the BVI Court for the making of a winding-up order against TERC and the appointment of a liquidator (the "Liquidation Application").

25.     On September 30, 2010, the BVI Court issued an order directing that: (i) TERC be wound up by the BVI Court in accordance with the provisions of the 2003 Act; and (ii) appointing Casey McDonald, Bob Yap Cheng Ghee and Patrick Cowley, as Joint Liquidators of TERC (the "Liquidation Order"). *Id.* ¶ 7 and Ex. 1 (a copy of the Liquidation Order).

26.     Entry of the Liquidation Order resulted in the commencement of a foreign proceeding as defined in 11 U.S.C. § 101(24).

27.     As set forth in section 184 of the 2003 Act, a liquidator appointed under the 2003 Act is required to preserve, gather in, and realize the world-wide assets of the debtor entity for the benefit of creditors. McDonald Declaration. ¶ 22; Corbett Declaration ¶ 14 & Ex. 1.

8

28.     Pursuant to section 175(1)(b) of the 2003 Act, upon commencement of the BVI Proceedings, the directors and officers of the debtor cease to have any power.  To that end, section 175 of the 2003 Act provides that, upon commencement of a liquidation proceeding, "the directors and other officers of the company remain in office, but they cease to have any powers, functions or duties other than those required or permitted by [Part VI of the 2003 Act]." McDonald Declaration. ¶ 23; Corbett Declaration ¶ 32 & Ex. 1.

29.     In practice, aside from their residual power to contest the liquidation (which has not been exercised here) the directors of TERC ceased to have any powers upon the appointment of the Joint Liquidators.  Similarly, the responsibility for the management of TERC now is vested with the Joint Liquidators, subject to supervision by the BVI Court.  McDonald Declaration. ¶ 24; Corbett Declaration ¶ 33.

30.     The BVI Liquidation is not for the benefit of any single creditor.  Rather, it operates to resolve and determine the rights of all claimants and stakeholders of the debtor. *See, e.g.,* 2003 Act, section 207 (providing for the payment of classes of admitted claims and expenses in accordance with statutory priorities, and if the amount available for such claims is insufficient to pay claims in full, directing ratable payment by class).  Any person or entity with a claim against TERC may assert such claim in the BVI Liquidation.  McDonald Declaration. ¶ 25; Corbett Declaration ¶ 21 & Ex. 1.

31.     The 2003 Act and the Liquidation Order together enumerate the Joint Liquidators' powers.  The Joint Liquidators are empowered to carry out all the functions and duties of a liquidator under the 2003 Act including the power to:

    a.   Pay any class of creditors in full.

    b.   Make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the company, whether present or future, certain or contingent, ascertained or not.

c. To compromise, on such terms as may be agreed

    i. Calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the company and any person; and

    ii. Questions in any way relating to or affecting the assets or the liquidation of the company;

    iii. And take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.

d. To commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the company in the British Virgin Islands and elsewhere.

e. To carry on the business of the company so far as may be necessary for its beneficial liquidation.

f. To sell or otherwise dispose of property of the company.

g. To do all acts and execute, in the name and on behalf of the company, any deeds, receipts or other documents.

h. To use the company's seal.

i. To prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for any balance against his estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankrupt or insolvent, and rateably with the other separate creditors.

j. To draw accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company with the same effect with respect to the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

k. To borrow money, whether on the security of the assets of the company or otherwise.

l. To take out in his official name letters of administration to any deceased member or past member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his estate, that cannot conveniently done in the name of the company.

m. For the purpose of enabling the Liquidators to take out letters of administration or do any other act under this paragraph, to be due to the Liquidators themselves.

n. To call meetings of creditors or members for

    i. The purpose of informing creditors or members concerning the progress of matters arising in the liquidation;

    ii. The purpose of ascertaining views of creditors or members on any matter arising in the liquidation; or

    iii. Such other purpose connected with the liquidation as the Liquidators consider fit.

o. To appoint a solicitor, accountant or other professionally qualified person to assist him in the performance of his duties.

p. To appoint an agent to do any business that the Liquidators are unable to do themselves, or which can be more conveniently done by an agent.

q. To apply to the Court for directions concerning any matter arising out of the exercise of the above powers.

r. To do all other things incidental to the exercise of the above functions and powers.

*See* McDonald Declaration ¶ 26 and Ex. 1; Corbett Declaration ¶ 15.

32.    BVI Court approval must be obtained before the Joint Liquidators can exercise any of the first five powers (listed at paragraphs 31 (a)-(e)). *See* McDonald Declaration. ¶ 27 and Ex. 1 (the Liquidation Order); Corbett Declaration ¶ 15 & Ex. 1, 2003 Act §186(3). The other powers enumerated in the Liquidation Order may be exercised without specific, prior BVI Court approval, but any such actions are always subject to BVI Court review. McDonald Declaration. ¶ 27; Corbett Declaration ¶ 16.

33.    BVI Liquidation proceedings are fair and equitable. All creditors have an opportunity to be heard by the BVI Court and no creditor will be prejudiced because it is based outside the BVI. Corbett Declaration ¶ 20.

34.    The powers of the Joint Liquidators are broadly comparable to those of a trustee under chapter 7 of the United States Bankruptcy Code. The Joint Liquidators are further empowered to continue the operations TERC subject to the BVI Court's approval, including the

11

continuation of its various profitable charters, and to maximize the value of the estate for creditors. McDonald Declaration. ¶ 28; Corbett Declaration ¶ 35.

35.      Under the 2003 Act, a liquidator is also empowered to promote a Company Creditor Arrangement ("CCA"), which is broadly comparable to a plan of reorganization in the United States. McDonald Declaration. ¶ 29; Corbett Declaration ¶ 34.

36.      The Joint Liquidators have obtained an order of the BVI Court authorizing the continuation of TERC's business for the benefit of winding up and maximizing the value of the estate, but have not yet determined whether a CCA will be beneficial and/or necessary. *Id.* ¶ 30.

37.      The Joint Liquidators have further obtained orders of the BVI Court authorizing the Liquidator to Petition the Courts of the United States of America and the United Kingdom for recognition of the BVI Liquidation. McDonald Declaration. *Id.* ¶ 31 and Ex. 4.

38.      A bank account was established by the Joint Liquidators in the BVI to handle TERC's receivables from ongoing charters and otherwise receive payments in connection with the realization of claims against third parties, as well as make payments due under the continuing charter agreements. The most significant realization in the liquidation to date are the funds in that BVI account, which is controlled by the Joint Liquidators. McDonald Declaration. *Id.* ¶ 33.

39.      The Joint Liquidators also reached an agreement with TERC debtor Crownland International Co. Ltd. ("Crownland"), whereby Crownland settled its debt to TERC in exchange for TERC releasing certain Crownland funds from Rule B attachment in New York. The Crownland settlement payment was paid to the TERC bank account in the BVI. McDonald Declaration. *Id.* ¶ 34.

40.      Mr. McDonald, as the Joint Liquidator located in the BVI, is responsible for calling and chairing (or assigning a BVI-based employee to chair) creditors' meetings. The first

meeting of creditors was held in the BVI on October 20, 2010. While a number of creditors (via their respective BVI legal counsel) attended the meeting in person, facilities were also made available for overseas creditors to attend the meeting. Mr. McDonald will be calling and supervising additional periodic creditor meetings. These meetings will likely occur in the BVI, but could conceivably be held elsewhere if the creditors collectively so choose. McDonald Declaration. To the extent such meetings are held in the BVI, it will be possible to participate telephonically for the convenience of creditors. McDonald Declaration. *Id.* ¶ 35.

41. Mr. McDonald also has been closely involved in continuing the operation of TERC's business from the BVI. This includes: negotiating with various owners, disponent owners and sub-charterers to prevent them from breaching TERC's on-going and still-profitable charters and contracts of affreightment - expected to generate $33 million in profits by 2013; as well as dealing with creditor queries. McDonald Declaration. *Id.* ¶ 36.

42. Mr. Cowley, another Joint Liquidator based in Hong Kong, has been gathering information and liasing with TERC's agent there. Mr. Cowley and Mr. McDonald are working together on liquidation activities, and Mr. Cowley generally acts in relation to liquidation issues where the relevant counter party is based in Asia. This is primarily for the purposes of efficiency in light of the substantially different time zones between the British Virgin Islands and Asia. Mr. Yap, a Joint Liquidator based in Singapore, has been dealing with TERC's creditor in Singapore and the ancillary Singapore action described below. He is further tasked with handling the liquidation in relation to TERC's claims against Armada Singapore Pte Ltd., which is itself in liquidation in Singapore. *Id.* ¶ 37.

43.     As described above, all of the actions undertaken by Mr. Cowley and Mr. Yap in connection with the BVI Liquidation from their respective locations (Hong Kong and Singapore), are subject to the supervision and/or require approval of the BVI Court.

### TERC Always Represented that it was a BVI Company

44.     Prior to Liquidation, TERC consistently represented itself to its counterparties as being a BVI company. *Id.* ¶ 71.

45.     In charter parties where TERC acted as disponent owner of its vessels, TERC was usually described as "Transfield ER Cape Limited, BVI." *Id.* ¶ 72 and Ex. 10. In charter parties where TERC acted as charterer or subcharterer, TERC was usually described as "Transfield ER Cape Limited, Charterers of the City of BVI." McDonald Declaration. ¶ 73 and Exs. 11-13. In contracts of affreightment and riders thereto, TERC was usually described as "Transfield ER Cape Limited BVI." *Id.* ¶ 74 and Exs. 14-15.

46.     Similarly, TERC's insurance documentation with its insurer, Assuranceforeningent SKULD (Gjensidig), describes TERC as "Transfield ER Cape Ltd., BVI." *Id.* ¶ 75 and Ex. 16.

47.     The documents mentioned above are entirely typical of TERC's agreements with third parties. Contracts of this type were at the heart of TERC's business, and the way in which TERC described itself and allowed itself to be described in such contracts would have been the main source of information available to any third party seeking to ascertain TERC's whereabouts. *Id.* ¶ 76.

48.     Furthermore, it is clear that TERC's creditors considered and continue to consider TERC to be based in the BVI.

49.     TERC creditors SK Shipping Europe plc and SK Shipping Co. Ltd. served a statutory demand, upon TERC pursuant to the 2003 Act upon: "Transfield ER Cape Limited (the "Company") c/o Portcullis Trustnet Chambers, Ellen Skelton Building, P.O. Box 3444, Road Town, Tortola, British Virgin Islands." *Id.* ¶ 78 and Ex. 17.

50.     TMT, the creditor whose petition ultimately resulted in the Liquidation Order, similarly sought to obtain payment from TERC by making a winding-up petition in the BVI. *Id.* ¶ 79.

51.     From the BVI, Mr. McDonald is engaged in substantial negotiations with representatives of creditor Jade, regarding the continuation of a profitable charter. McDonald Declaration. *Id.* ¶ 80.

52.     Finally, a number of TERC's substantial creditors (China Earth Shipping Inc., China Sun Shipping Inc., China Saturn Inc. and Cosco Bulk Carrier Co. Ltd.) have written letters of support in favor of the Joint Liquidators' appointment and the BVI Liquidation proceedings. *Id.* ¶ 81 and Ex. 18 (copies of these letters).

53.     TERC had no employees in any jurisdiction. TERC's officers and directors did not reside in the BVI but neither their identity nor locations have ever been publicly available. Regardless, as stated above, BVI law dictates that upon liquidation the liquidators displace officers and directors with respect to their duties. Mr. McDonald, who now operates TERC's continuing business, resides in and executes his powers and duties from, the BVI. *Id.* ¶ 82.

54.     Prior to the BVI Liquidation, TERC maintained an agency relationship with an entity called Transfield Resources, which is based in Hong Kong. The fact of the agency was disclosed to third parties, such that parties were put on notice that the principal on the contract

was based in the BVI. *See* McDonald Declaration ¶ 83 and Ex. 19 (Hire Statements from "Transfield ER Cape Limited, c/o Transfield Resources Ltd., as agent").

### The United Kingdom Recognition Proceeding

55.     Before the BVI Liquidation commenced, a number of TERC's counterparties instituted arbitration and court proceedings in London in accordance with the terms of various charter parties and contracts of affreightment between them. *Id.* ¶ 39.

56.     To prevent these actions from disrupting the BVI Liquidation, on October 27, 2010, the Joint Liquidators made an application to the English High Court of Justice, Chancery Division, for recognition of the BVI Liquidation as foreign main proceeding pursuant to British statute implementing the Model Law on Cross-Border Insolvency, the Cross Border Insolvency Regulations of 2006. *Id.* ¶ 40.

57.     On November 1, 2010, the English Court recognized the BVI Liquidation as a foreign main proceeding and granted all of the relief requested (the "English Recognition Order"). *Id.* ¶ 41 and Ex. 5.

### The Ancillary Singapore Proceeding

58.     In addition to the recognition proceedings in England, there also is an ancillary Singapore liquidation proceeding (the "Ancillary Singapore Liquidation") with respect to TERC.

59.     On October 15, 2010, (two weeks after the BVI Liquidation Order was issued), the Singapore Court made a winding up order in respect of TERC and appointed the same Joint Liquidators (Mr. McDonald, Mr. Cowley, and Mr. Yap) as liquidators in respect of the ancilliary Singapore liquidation (the "Singapore Order"). *Id.* ¶ 43 and Ex. 6 (a copy of the Singapore

Order). The petitioning creditor and the Singapore Court agreed that a unified process would be most expeditious and efficient. *Id.* ¶ 43.

60.     Singapore has no statutory or common law mechanisms for the recognition of foreign insolvency proceedings. Accordingly, "recognition" of the BVI Liquidation was not legally possible. However, this is the defacto result. In the Ancillary Singapore Liquidation, the liquidators will realize the assets based in Singapore and make payment to local preferential creditors, which (i) will consist solely of the petitioning creditor and (ii) will be limited to the costs of the petition and the ancillary, Singapore proceeding. *Id.* ¶¶ 42,44.

61.     After said deduction, the balance of whatever assets of TERC are realized in Singapore will be transferred to the BVI for distribution to creditors in the BVI Liquidation. *Id.* ¶ 45.

**The Actions Against, and Assets of, TERC in the United States**

62.     There presently are five legal proceedings against TERC in the United States, all of which are based in New York. They are: (i) *China Earth Shipping Inc. v. Transfield ER Cape Limited,* Index No. 650621-2010 (N.Y. Sup. Ct.) (the "China Earth" Action); (ii) *China Sun Shipping Inc. v. Transfield ER Cape Limited* Index No. 650622-2010 (N.Y. Sup. Ct.) (the "China Sun Action"); (iii) *Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd. and Transfield ER Ltd.* No. 10-cv-4434 (SHS) (S.D.N.Y.) (the "Constellation Action"); (iv) *Jade Navigation S.A. v. Transfield ER Cape Ltd.,* No. 10-cv-4899 (S.D.N.Y.) (AKH) (the "Jade Action"); and (v) *TMT Bulk Co. Ltd. v. Transfield ER Cape Ltd. and Transfield ER Ltd.,* No. 10-cv-5110 (JSR) (S.D.N.Y.) (the "TMT Action"). *Id.* ¶ 46.

63.     The China Earth Action seeks recognition and enforcement of a Hong Kong default judgment against TERC in the amount of $7,430,561.00. TERC has filed a motion to dismiss the matter on the grounds of lack of personal jurisdiction and *forum non conviens*. The China Earth motion to dismiss is *sub judice. Id.* ¶ 47.

64.     The China Sun Action seeks recognition and enforcement of a Hong Kong default judgment against TERC in the amount of $42,175,980.00. TERC has filed a motion to dismiss the matter on the grounds of lack of personal jurisdiction and *forum non conviens*. The China Sun motion to dismiss is *sub judice. Id.* ¶ 48.

65.     The Constellation Action seeks recognition and enforcement of a London Arbitration award in the amount of $7,577,600.00. TERC filed a motion to dismiss the matter on the grounds that the award was not yet final, that the petition seeks enforcement against a party that is not a signatory to the arbitration agreement, and on the ground of *forum non conviens*. The Constellation motion to dismiss is *sub judice. Id.* ¶ 49.

66.     TERC is the beneficial owner of a bank balance in the amount of $866,377.36, which sum is held in an escrow account at J.P. Morgan Chase Bank, N.A. ("JP Morgan") in New York (the "Escrow Account"). *Id.* ¶ 50.

67.     In the now-dismissed matter of *Front Carriers v. Transfield ER Cape et. al,* No. 07-cv-6333 (RJS) (S.D.N.Y.), plaintiff Front Carriers attached $15,101,338.00 million in "electronic funds transfers" ("EFTs") as security for Front Carriers' then-ongoing arbitration against TERC in Paris, France. TERC demanded (and obtained) counter-security for its counterclaim in the Paris Arbitration from Front Carriers in the amount of $5,210,280. *Id.* ¶ 51.

68.     Front Carriers and TERC resolved to place the security and counter-security in escrow accounts at J.P. Morgan, so that the parties could earn interest on the security while the Paris Arbitration progressed. *Id.* ¶ 52.

69.     On June 17, 2010, the Paris Arbitration Panel entered an award against TERC in the amount of $5,945,530 (plus interest), and denied TERC's counterclaims against Front Carriers. Accordingly, Front Carriers' posted security was released, and TERC paid Front Carriers the amount of the arbitration award from the Escrow Account as agreed. The remainder of the security obtained by Front Carriers, approximately, $9.9 million, was to be released to TERC. *Id.* ¶ 53.

70.     Before any release to TERC could be effectuated by J.P. Morgan, Jade filed the Jade Action. *Id.* ¶ 54.

71.     Specifically, Jade filed a verified complaint against TERC seeking a Rule B attachment in support of its claims against TERC in London Arbitration. On June 25, 2010, Jade obtained an Order authorizing Rule B attachment in the amount of $866,377.36 (the "Jade Rule B Attachment Order"). *Id.* ¶ 55 and Ex. 7 (a copy of the Jade Rule B Attachment Order).

72.     Jade served its Rule B Attachment Order upon J.P. Morgan on or about that same day. J.P. Morgan is presently restraining TERC's funds in the Escrow Account in the amount of $866,377.36 pursuant to the Jade Rule B Attachment Order. The remaining Escrow Account funds were released. *Id.* ¶ 56.

73.     On August 13, 2010, TERC filed a motion to vacate the Jade Rule B attachment order *inter alia*, on the ground that the attachment was invalid *ab initio*. Jade moved for discovery in connection with TERC's motion to vacate. Both the vacatur motion and the discovery motion in the Jade Action are *sub judice*. *Id.* ¶ 57.

74. TERC creditor TMT also filed a verified complaint against TERC seeking Rule B attachment as security for its London arbitrations against TERC. The District Court issued an order authorizing Rule B attachment of the TERC funds being held in escrow by J.P. Morgan on July 6, 2010 (the "TMT Rule B Attachment Order"), which order was served upon J.P. Morgan. *Id.* ¶ 58 and Ex. 8 (a copy of the TMT Rule B Attachment Order).

75. On August 17, 2010, TERC filed a motion to vacate the TMT Rule B Attachment Order, *inter alia,* on the ground that the attachment was invalid *ab initio*. TMT filed an opposition on September 3, 2010 and a reply was submitted by TERC on September 10, 2010. *Id.* ¶ 59.

76. On November 8, 2010, TERC's motion to vacate the TMT Rule B Attachment Order was granted in its entirety (the "TMT Vacatur Order"). The TMT Vacatur Order states that "final judgment dismissing the Complaint will not be entered until the Court issues an opinion setting forth the reasons for this ruling. In the interim, further proceedings in this case are stayed." *Id.* ¶ 60 and Ex. 9 (a copy of the TMT Vacatur Order).

## RELIEF REQUESTED

77. The Petitioners seek entry of an Order of this Court pursuant to sections 105(a), 1507, 1517, 1520, and 1521 of the Bankruptcy Code, substantially in the form of the proposed order attached hereto as Ex. A (the "Proposed Recognition Order"), granting the following relief:

   i.   Recognition of the BVI Liquidation as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code;

      1. Or in the alternative, recognition of the BVI Liquidation as a foreign non-main proceeding as defined in section 1502(5) of the Bankruptcy Code;

   ii.  Granting relief automatically and as of right upon recognition of a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code as set forth in the proposed recognition order, Ex. A hereto;

iii.    Granting additional relief as authorized by section 1521 of the Bankruptcy Code as set forth in the proposed recognition order, Ex. A hereto;

iv.    Granting further relief as authorized by section 1507 of the Bankruptcy Code and implementing the stay of action and executions against TERC and its assets as set forth in the 2003 Act.

v.    Otherwise granting comity to and giving full force and effect to the BVI Liquidation; and

vi.    Awarding the Joint Liquidators such other and further relief as this Court may deem just and proper.

78.    Pending the entry of an order on recognition, Petitioners seek the following provisional relief pursuant to sections 105(a) and 1519 of the Bankruptcy Code:

a.    immediate entry of an order to show cause with temporary restraining order, substantially in the form of Ex. B hereto (the "Order to Show Cause"), pending the hearing on the Liquidators' Petition for recognition under Chapter 15 of the BVI Liquidation; and scheduling a hearing on Petitioners' request for continuing provisional relief.

b.    entry of an order substantially in the form attached hereto as Ex. C (the "Provisional Relief Order"),

i.    provisionally staying the U.S. Actions;

ii.    staying and enjoining further execution, attachment or restraint of TERC's assets, including but not limited to TERC funds held in the Escrow account; and

iii.    prohibiting all persons from commencing or continuing any litigation or any other proceeding, including, without limitation, appeals, mediation or any judicial, quasi judicial, administrative or regulatory action, proceeding, or any process whatsoever, or taking any other actions against the Petitioner (with respect to TERC), TERC, or any of TERC's assets, and prohibiting all persons from seeking issuance of United States or New York process or initiating United States or New York proceedings designed to effectuate the restraint, turnover or execution of TERC assets or interests located outside the United States.

79.    Such relief will ensure, among other things, that TERC's U.S. Assets will not be improperly attached, disposed of or withheld by creditors or third parties. Notwithstanding the

foregoing, the relief requested herein will in no way affect any rights pursuant to sections 555, 556, 557, 559, 560, 561, 562 and 1519(d) and (f) of the Bankruptcy Code.

## BASIS FOR RECOGNITION

80.    Section 1517 of the Bankruptcy Code mandates entry of an order recognizing a "foreign proceeding" if, after notice and a hearing, it appears that recognition will not undermine U.S. public policy and: "(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a).

81.    Each of those requirements is met here, and entry of an order in the form of Ex. A will significantly aid the Joint Liquidators' efforts to administer TERC's assets and liabilities, continue TERC's profitable business and charters to benefit TERC's creditors, and ensure a fair and equitable treatment of and distribution to TERC's creditors.

A.    **The BVI Liquidation is a Foreign Proceeding and the Liquidator is a Foreign Representative**

82.    Section    101(23)    of    the    Bankruptcy    Code    defines    a    foreign proceeding as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

22

83. This definition incorporates the term foreign representative, which is defined as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). There is no question that the BVI Liquidation meets all of these requirements.

84. First, the BVI Liquidation is a judicial proceeding in a foreign country, the BVI, subject to the control and supervision of the BVI Court. All claims against TERC may be submitted in the BVI Liquidation and all claimants have the right to access the BVI Court and appeal decisions of the Joint Liquidators. Moreover, as described in detail above, critical functions of the Joint Liquidators, including the settlement of claims, distribution of assets and determination of the priority of creditors may only be exercised with the explicit consent of the BVI Court.

85. Second, the BVI Liquidation is being conducted by the Joint Liquidators, who were appointed by the BVI Court pursuant to the 2003 Act to liquidate TERC according to the provisions of the 2003 Act. As such the Joint Liquidators are "persons" authorized to administer the reorganization and/or liquidation of TERC's assets and affairs within the meaning of section 101(24).

86. Third, the law governing the BVI Liquidation, the 2003 Act, specifically relates to "insolvency or adjustment of debt." 11 U.S.C. §101(23). The full name of the 2003 Act is the "Virgin Islands Insolvency Act of 2003," and it sets out the rules for administering the liquidation of an entity under BVI Law. *See* Corbett Declaration Ex. 1.

87. Finally, the BVI Liquidation is "collective" because it "considers the rights and obligations of all creditors." *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009). As set

23

forth in the Financial Statements, the Joint Liquidators are presently in the process of collecting and assessing claims from all of TERC's creditors. The Joint Liquidators have held and will be holding creditor meetings in the BVI, unless creditors consensually choose another location, and the Joint Liquidators have been in contact with TERC creditors and counterparties.

88.　　All of the plaintiffs in the U.S. Actions described above are active participants in the BVI Liquidation. TMT Bulk initiated the BVI Liquidation; China Earth and China Sun have written letters to the BVI Court in support of the BVI Liquidation; Mr. McDonald is actively negotiating with Jade in respect of the continuation an ongoing, profitable TERC charter; and Constellation is the petitioning creditor in the Ancillary Singapore Liquidation and must submit its substantive claims in the BVI.

89.　　This Court recently recognized a similar BVI liquidation proceeding of BVI financial entities as a "foreign proceeding" and accorded to the joint liquidators of those proceedings the status of foreign representatives for the purposes of chapter 15. *See In re Fairfield Sentry Ltd.*, 2010 WL 4455879 (Lifland, J.). The Bankruptcy Court for the District of New Jersey likewise recognized a similar petition by a BVI entity. *See In re Grand Prix Assocs., Inc.*, No. 09-16545 (DHS), 2009 WL 1410519 (Bankr. D.N.J., May 18, 2009). This Court should find that the BVI Liquidation at issue here qualifies as a foreign proceeding and that Petitioner qualifies as a foreign representative for purposes of chapter 15.

**B.**　　**The BVI Liquidation is a Foreign Main Proceeding**

90.　　A foreign proceeding will be recognized as a foreign main proceeding if "it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(l). Under section 1516(c) of the Bankruptcy Code, "absent evidence to the contrary,

the debtor's registered office . . . is presumed to be the center of the debtor's main interests" or its "COMI."

91.     Here, TERC is a BVI company formed pursuant to the laws of the British Virgin Islands, and its registered office is located there. Accordingly, this Court and Petitioners are entitled to rely on the section 1516(c) presumption that the BVI is TERC's COMI.

92.     Petitioner further submits that the facts of this case support a finding that that BVI is TERC's COMI.

93.     It is well-established that in determining an insolvent entity's COMI, courts consider any relevant factors including: (i) the location of the debtor's assets; (ii) the location of the debtor's books and records; (iii) the location of the majority of the debtor's creditors; (iv) the commercial expectations and knowledge of the debtor's creditors; and (v) the location of those who actually manage the debtor. *See In re SPhinX,* 351 B.R. 103 (Bankr. S.D.N.Y. 2006), *aff'd,* 371 B.R. 10 (S.D.N.Y. 2007).

94.     As an initial matter, substantial TERC assets - including its liquid assets (TERC's bank account balance) - are located in the BVI. The bank account that will be used to collect TERC receivables from ongoing charters is in the BVI. TERC debtor Crownland has already remitted funds to this BVI account in connection with a settlement agreement entered into between Petitioners and Crownland.

95.     TERC's creditors are multinational.

96.     TERC's ongoing business primarily consists of intangible rights in charters and contracts of affreightment. The charter hire to be paid under these contracts will be paid to the Joint Liquidators in the BVI. Hence the situs of TERC's intangible property - the whole of its ongoing business - is in the BVI.

25

97. So too, TERC's books and records are in the BVI. The Joint Liquidators have displaced the board of directors of TERC and the Joint Liquidators are continuing TERC's business from the BVI.

98. Courts have found that the language of chapter 15 directs them to examine a foreign debtor's COMI as of the instant of the (US) chapter 15 filing. *Cf. In re Ran,* 607 F.3d 1017, 1025 (5th Cir. 2010) (holding that section 1502 defines foreign main proceeding in the present tense as a "foreign proceeding pending in the country where the debtor *has* the center of its main interests") (emphasis in original). *See also Fairfield Sentry,* 2010 WL 4455879 at *3 ("where by necessity and in good faith, a foreign representative relocates all of the primary business activities of the debtor to his location (or brings business to a halt), thereby causing other parties to look to the judicial manager as the location of [the] debtor's business, the debtor's COMI may "become lodged with the foreign representative") (internal quotations and citations omitted).

99. Judge Lifland's recent decision in *Fairfield Sentry,* 2010 WL 4455879 *2-4, is instructive. In support of his decision to recognize the BVI liquidations as foreign main proceedings under chapter 15, he explicitly considered the following activities of the Fairfield debtors' joint liquidators in the BVI: (i) board meetings conducted telephonically by the debtor's counsel in the BVI; (ii) the presence in the BVI of the liquidators' employees and offices, as well as the foreign debtors' books and records; and (iii) the fact that liquidator created an "administrative nerve center" in the BVI for the foreign debtor. *See also Grand Prix Associates,* 2009 WL 1410519 at *8 (BVI was "clearly" the foreign debtors' COMI where debtors had no place of business outside the BVI, the debtors' books and records were located in the BVI and the "necessary operating expenses for entities [was] held in a bank account in the BVI"); *In re*

*Saad Invs. Fin. Company (No. 5) Ltd.,* 09-13985 (Bankr. D. Del. December 17, 2009) (KG) (main recognition was appropriate based upon post-insolvency activities in the Cayman Islands, including creditor involvement, substantial asset management and Cayman-based oversight by the administrator and creditor's committee).

100. Here, the Joint Liquidators are engaging in substantial post-liquidation activity from offices in the BVI including: (i) continuing and managing TERC's profitable charters (TERC's primary business); (ii) displacing and assuming the duties of the board of directors; (iii) funding these activities from bank accounts located in the BVI that are being used to receive and pay charter hire for vessels; (iv) calling and chairing creditors' meetings in the BVI; (v) handling creditor queries; and (vi) performing negotiations with respect to still-profitable charters. For example, the Liquidators have obtained the sanction of the BVI Court to continue with certain profitable charter agreements and regular hire payments are received into the Liquidators' BVI bank account from sub-charterers, and corresponding onward hire payments are then made by the Liquidators to the vessel owners. *See* McDonald Declaration ¶ 28.

101. All of these facts distinguish this action from *In re Bear Stearns,* 374 B.R. 122 (S.D.N.Y. 2007), where chapter 15 recognition of the Cayman liquidation proceedings of several Bear Stearns feeder funds was denied. In that case, the *Bear Stearns* Court noted that no assets of the foreign debtor were located in the Caymans, the funds' books and records were located in New York, the majority of the funds' creditors were U.S. citizens and entities, and perhaps most importantly, there was no evidence that any creditor or investor knew or had reason to know of the Funds' Cayman Islands' registration.

102. By contrast, TERC's liquid and intangible assets are located in the BVI, as are its books and records[4]. Furthermore, as detailed in paragraphs 44-54 above, and fully detailed in the McDonald Declaration at 71-83 and Exs. 10-18, there is clear and voluminous evidence that TERC's exclusively non-domestic, multi-national counterparties and creditors had actual knowledge that TERC was a BVI entity. *See In re Chiang,* 437 B.R. 397, 403 (Bankr. C.D.Cal. 2010) ("[t]he location of the COMI is an objective determination based on the viewpoint of third parties (usually creditors)").

103. In *In re Culmer,* 25 B.R. 621, 632 (Bankr. S.D.N.Y. 1982), Judge Lifland recognized a Bahamas liquidation pursuant to chapter 15's predecessor, 11 U.S.C. § 304, where the entities' creditors similarly had actual knowledge they were dealing with a Bahamas entity. He reasoned: "This result is altogether just and appropriate as these creditors dealt freely with [the foreign debtor] and were undoubtedly aware that they were dealing with a [company] incorporated under and subject to foreign law when they first began doing business with [the foreign debtor]." He quoted at length from the Supreme Court's "declaration" in *Canada Railway Co. v. Gebhard* 109 U.S. 527, 537-538 (1883) as follows:

> [E]very person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes. To all intents and purposes, he submits his contract with the corporation to such a policy of the foreign government, and whatever is done by that government in furtherance of that policy, which binds those in like situation with himself, who are subjects of the government, in respect to the operation and effect of their contracts with the corporation, will necessarily bind him. He is conclusively presumed to have contracted with a view to such laws of that government, because the corporation must of necessity be controlled by them, and it has no power to contract with a view to any other laws with which they are not in entire harmony.

---

[4] A significant amount of TERC's books and records are in the BVI. The Joint Liquidators are presently ensuring that any records in the custody of third parties or outside the BVI are transferred to the BVI.

25 B.R. at 632.

104.    In sum, Petitioners submit that there is ample evidence and precedent to support the recognition of the BVI Liquidation as a foreign main proceeding.

105.    When presented with the same facts and largely the same analytical framework for recognition, the English High Court of Justice concluded that the BVI is TERC's COMI and that the BVI Liquidation constituted a foreign main proceeding. Petitioner urges this Court to similarly recognize the BVI Liquidation as a foreign main proceeding here.

C.    **Alternatively, the BVI Liquidation Should Be Recognized as Foreign Non-Main Proceeding and The Court Should Issue an Order Staying the U.S. Proceedings Against TERC and Its Assets**

106.    Section 1502(5) of the Bankruptcy Code defines a foreign non-main proceeding as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." In turn, "establishment" is defined by 11 U.S.C. § 1502(2) as being "any place of operations where the debtor carries out nontransitory economic activity."

107.    Petitioners respectfully submit that at a minimum, the Joint Liquidators' activities in the BVI constitute nontransitory economic activity. The Joint Liquidators are continuing the business of TERC, chartering vessels, from offices in the BVI. The Joint Liquidators expect that continuing charters and contracts of affreightment will generate approximately $33 million in profits through 2013 for the benefit of TERC's creditors. Similarly, the Joint Liquidators will be administering the BVI Liquidation, TERC's continuing operations and paying creditors from funds held in bank accounts in the BVI.

108.    With the exception of the Ancillary Singapore Proceeding, which is being conducted by the Joint Liquidators in cooperation with the BVI Liquidation and the recognition

proceeding in England, which likewise is simply an adjunct to the BVI Liquidation (as will this proceeding) there is no insolvency proceeding other than the BVI Liquidation.[5]

109.    There can be no dispute that the BVI Liquidation is a legitimate insolvency proceeding. Under the circumstances and given that TERC's ongoing business activities are being conducted from the BVI, at a minimum there are sufficient grounds for this Court to grant non-main recognition to the BVI Liquidation pursuant to chapter 15 and further, to grant Petitioners the discretionary relief requested.

110.    In *In re SPhinX,* 351 B.R. at 103, Judge Drain denied the foreign representative's request for a stay of proceedings in the United States on the eve of a creditor settlement because he deemed that request to be improperly motivated - specifically, to disrupt the otherwise proper settlement. He perceived that certain creditors were attempting to derail the settlement.

111.    By contrast, there is no improper purpose here. Rather, by this action, Petitioners are merely acting in accordance with their statutory duty to ensure that the proceeds of TERC's assets are equitably distributed and that no creditor obtains an improper preference.

112.    Section 1521(a)(1) of the Bankruptcy Code permits this Court to stay the commencement or continuation of an individual action or proceeding concerning TERC's assets, rights, obligations or liabilities. Section 1521(a)(2) of the Bankruptcy Code permits this Court to stay execution against TERC's assets.

113.    In the event of non-main recognition, and due to the various creditor threats to the BVI Liquidation and TERC's estate discussed above, this case presents exactly the circumstances in which these powers should be exercised. U.S. Bankruptcy Courts are "not obliged to protect the positions of fast-moving American and foreign attachment creditors over the policy favoring

---

[5] Incidentally, Petitioners submit that (i) the BVI Liquidation is properly a "foreign main proceeding," while (ii) the Ancillary Singapore Proceeding would be properly characterized as a "foreign non-main proceeding."

uniform administration in a foreign court"). *In re Culmer*, 25 B.R. at 629; *see also Banque de Financement, S.A. v. First National Bank of Boston*, 568 F.2d 911, 921 (2d Cir. 1977).

114.    Section 1507 of the Bankruptcy Code empowers this Court to grant additional assistance to a foreign representative. Recently, the Fifth Circuit Court of Appeals held that this provision entitled the foreign representative to rely upon foreign law. *In re Condor Ins. Ltd.*, 601 F.3d 319 (5th Cir. Mar. 17, 2010).

115.    In *Condor*, the Fifth Circuit examined the jurisdiction of a bankruptcy court to offer avoidance relief under foreign law in a chapter 15 proceeding. There, the foreign representative of a Nevis debtor alleged that the debtor fraudulently transferred over $313 million in assets to an affiliate of the debtor with the intent of placing that money outside the reach of creditors during the Nevis insolvency proceeding.

116.    After carefully reviewing the statutory language and legislative history of chapter 15, and the previous case-law interpreting chapter 15's predecessor, former section 304, the Fifth Circuit found that chapter 15 was "silent regarding proceedings that involve foreign law, including any rights of avoidance such law may offer." *Id.* at 323. The court further noted that "[g]enerally where there are enumerated exceptions 'additional exceptions are not to be implied, in the absence of a contrary legislative intent.'" *Id.* at 324 and n.22 (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)). The court further observed "[i]f Congress wished to bar all avoidance actions whatever their source, it could have stated so; it did not." *Id.* Accordingly, *Condor* held that "Congress did not intend to restrict the powers of the U.S. court to apply the law of the country where the main proceeding pends." *Id.* at 327.

117.    Here, all of the U.S. Actions constitute either judgment enforcement or claim security actions. The relevant BVI law, the 2003 Act, clearly provides for a stay of such actions.

31

118.    Section 175 of the 2003 Act is entitled "Effect of Liquidation." Section 175(c) states: "Unless the Court otherwise orders, no person may (i) commence or proceed with any action or proceeding against the company or in relation to its assets, or (ii) exercise or enforce, or continue to exercise or enforce any right or remedy over or against the assets of the company." Corbett Declaration, ¶ 24.

119.    Section 176 of the 2003 Act is entitled "restriction on execution or attachment." Section 176(1) states: "Subject to subsections (2) and (3), a creditor is not entitled to retain the benefit of any execution process, distress or attachment over or against the assets of a company in liquidation unless the execution, process or attachment is completed before... the commencement of the liquidation...." Corbett Declaration, ¶ 25.

120.    Presently, no creditor involved in any of the U. S. Actions has any priority to proceeds of the TERC estate under BVI law. Each has appeared or submitted claims in the BVI Liquidation and should be bound by the BVI stay as described above. McDonald Declaration, ¶ 91.

121.    For these reasons, if this Court finds that non-main recognition is warranted, Petitioners request that this Court to exercise its power pursuant to section 1521 to grant a stay of the U.S. Actions and/or 1507 of the Bankruptcy Code to give effect to the 2003 Act's stay on execution and attachment of TERC assets while the BVI Liquidation is pending.


D.    **The BVI Liquidation Meets All Other Requirements for Recognition**

122.    In addition to being a foreign main proceeding brought by a duly appointed foreign representative, the BVI Liquidation meets all other requirements for recognition under section 1515. The Petition is accompanied by evidence supporting the existence of a foreign

proceeding and a foreign representative, including a copy of the Liquidation Order issued by the BVI Court in English. *See* 11 U.S.C. 1515(b); *see also* McDonald Declaration Ex. 1.

123.    The Petition is accompanied by a declaration containing the information required by Bankruptcy Rule 1007, including the disclosures required by Bankruptcy Rule 7007.1, a statement indicating that there are no other persons or entities known to the Petitioner that are authorized to administer foreign proceedings with respect to TERC, a list of all parties to litigation with TERC in the United States, and a list of all entities against which provisional relief is sought. *See* McDonald Declaration, Ex. 20, and Schedule A thereto. Likewise the documents supporting the Petition are in English or certified translations have been provided. *See* 11 U.S.C. § 1515(d).

124.    Under these circumstances, the Joint Liquidators and the Petition satisfy all of the requirements for recognition of the BVI Liquidation as a foreign main proceeding under chapter 15.

## BASIS OF APPLICATION FOR PROVISIONAL RELIEF

125.    Section 1519(a) of the Bankruptcy Code expressly permits the Court to grant "relief of a provisional nature" from the time a petition for recognition is filed until the court rules on that petition, where such relief is "urgently needed to protect the assets of the debtor or the interest of the creditors." 11 U.S.C. § 1519(a). Specifically, section 1519(a) allows the Court to enter relief of the kind requested above, including, *inter alia*, staying execution against the debtor's assets; suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor; entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; providing for the examination of

33

witnesses; or granting any other relief, with certain exceptions, that may be available to a trustee. *Id.; see also* 11 U.S.C. § 1521(a) (3), (4) and (7) (setting forth additional forms of relief allowed under provisional order as incorporated by reference in 11 U.S.C. § 1519(a)(3)).

126.    The relief requested by the Petitioner, the issuance or an order to show cause with *ex parte* temporary relief, and the issuance of a temporary order staying the U.S. Actions, is exactly that contemplated by the above provisions. *See* Exs. B & C to this Petition. Indeed, provisional relief such as that requested herein has been granted frequently in other chapter 15 cases to foreign representatives. *See, e.g., In re Britannia Bulkers A/S,* No. 08-15187 (REG) (Bankr. S.D.N.Y. Jan. 5, 2009); *In re Armada (Singapore) Pte Ltd.,* No. 09-10105 (JMP) (Bankr. S.D.N.Y. Jan. 7, 2009); *In re The Int'l Banking Corp., B.S.C.* No 09-17318 (Bankr. S.D.N.Y., Jan. 5, 2009) (SMB); *In re Britannia Bulk Plc,* No. 08-14543 (REG) (Bankr. S.D.N.Y. Nov. 20, 2008); *In re Alitalia Linee Aeree Italiane S.p.A.,* No. 08-14321 (BRL) (Bankr. S.D.N.Y. Nov. 3, 2008); *In re Afinsa Bienes Tangibles SA,* No. 07-10675 (JMP) (Bankr. S.D.N.Y. March 15, 2007); *In re Daewoo Corp.,* No. 06-12242 (REG) (Bankr. S.D.N.Y. Sept. 25, 2006); *In re Hatteras Reinsurance Ltd.,* No. 06-11304 (JMP) (Bankr. S.D.N.Y. June 8, 2006); *In re Yukos Oil Company,* No. 06-10775 (RDD) (Bankr. S.D.N.Y. April 13, 2006).

127.    A temporary stay of all U.S. litigation pending this Court's decision on the Petition is urgently necessary to preserve the estate and protect TERC's creditors.

128.    Like the Bankruptcy Code, the key principle underlying the 2003 Act and BVI insolvency proceedings is *in pari passu* - that like creditors should be treated alike. Corbett Declaration ¶ 18.

129.   Each of the U.S. Actions constitute ancillary prejudgment security or judgment enforcement actions. There are no substantive issues concerning the liabilities or debts of TERC pending in any U.S. Court.

130.   If any creditor is permitted to execute upon the Escrow Account funds, it will jeopardize and destroy the equitable distribution of assets in the BVI Liquidation. Additionally, the prospect of obtaining an improper priority to TERC funds in the United States is making the BVI Liquidation more difficult and costly to achieve. McDonald Declaration ¶ 92.

131.   Finally, the stated intention of the China Earth and China Sun entities to utilize the New York Court of Appeals' decision in *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 539 (2009) to execute against or otherwise encumber TERC's non-United States assets presents a grave and immediate threat to the integrity of the BVI Liquidation and TERC's creditors as a whole. *See id.* ¶ 94 and Ex. 21. Such action would certainly result in costly and contentious litigation implicating conflict of laws and international issues of governmental sovereignty, particularly given that the BVI Liquidation encompasses numerous debtors, creditors and counterparties of TERC that are subject to the jurisdiction of New York's courts.

132.   As the Second Circuit has held, "[t]he theme of the Bankruptcy Act is equality of distribution of assets among creditors... and correlatively avoidance of preference to some... The road to equity is not a race course for the swiftest." *Israel British Bank (London), Ltd. v. Fed Deposit Ins. Corp.*, 536 F.2d 509, 513 (2d Cir. 2006), *cert. denied sub nom. Bank of the Commonwealth v. Israel-British Bank (London) Ltd.*, 429 U.S. 978 (1976) (internal citations omitted).

133.   "The guiding premise" of bankruptcy law is "the equality of distribution among the creditors." *Cunard S.S. Co. Ltd. v. Salen Reefer Servs., A.B.*, 773 F.2d 452, 459 (2d Cir.

1985). Rather than exposing the Foreign Debtor's to actions that could lead to the piecemeal distribution of its assets, the relief requested herein will afford Petitioner the "breathing room" necessary to conduct an orderly review of TERC's affairs so that its creditors receive equitable treatment. Accordingly, the requested provisional relief should be granted.

## A. Petitioner Satisfies the Standards Applicable to an Injunction

134.    Section 1519(e) provides: "The standards, procedures, and limitations applicable to an injunction shall apply to [a request for provisional] relief under this section." 11 U.S.C. §1519(e). In the Second Circuit, the party seeking injunctive relief must show that it is likely to suffer irreparable and imminent harm if temporary injunctive relief is not granted and either (i) likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the provisional relief. *See Tinnerello & Sons, Inc. v. Town of Stonington,* 141 F.3d 46, 51-52 (2d Cir. 1998); *In re Lines,* 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988). Those standards are all satisfied in this case.

### *1.  Irreparable Harm*

135.    An estate is irreparably harmed when the orderly determination of claims and equitable distribution of assets are endangered. *See In re Netia Holdings S.A.,* 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) (enjoining any proceedings in New York against assets of the foreign debtor on the ground that "[i]t is well established, at least in this district, that the dissipation of finite resources of an insolvent estate constitutes irreparable injury"); 2 Collier on Bankruptcy, 304.05 at 304-21 (Alan N. Resnick & Henry J. Somme eds., 15th ed. rev. 2009) ("irreparable harm is present when the failure to enjoin local actions will disrupt the orderly reconciliation of claims and the fair distribution of assets in a single, centralized forum").

36

136.    As described above, the requested provisional relief is required to allow the Joint Liquidators to perform their statutory functions, preserve TERC's U.S. and non-U.S. Assets and ensure that TERC's creditors receive equitable treatment.  The threats to these goals are very real, as evidenced by the already-issued Rule B Attachment Orders, and the stated intentions of two TERC creditors.

137.    The Constellation, China Sun and China Earth actions are styled as arbitration and judgment enforcement actions, respectively.  The very purpose of these actions is to execute upon TERC assets.

138.    It is possible that a judgment could be entered against TERC in the Constellation, China Sun and China Earth actions before this Court has the opportunity to decide the issues of recognition or even provisional relief.  *See* Power Declaration ¶ 5;  *see also Petition of Rukavina,* 227 B.R. 234, 242 (Bankr. S.D.N.Y. 1998) (the commencement or pendency of local litigation irreparably harms a foreign debtor because it encourages a "race to the courthouse").

139.    Upon the issuance of a judgment against TERC, a judgment creditor is immediately empowered to send a "restraining notice," pursuant to New York Civil Practice Law and Rules ("CPLR") § 5222, to any entity of person subject to jurisdiction in New York.  The New York Court of Appeals has recently made clear that (i) such restraining notices have extra-territorial effect, and (ii) a judgment creditor may seek to have the extra-territorial property of a judgment debtor "turned over" in satisfaction of a judgment pursuant to CPLR § 5225 (b).  *See generally, Koehler v. Bank of Bermuda Ltd.,* 12 N.Y.3d 533, 539 (2009); Power Declaration ¶ 6.

140.    Similarly, upon the issuance of a judgment against TERC, a creditor is immediately empowered to issue a "writ of execution" pursuant to CPLR §§ 5230-5232.  Writs

of executions are lien-creating devices that would further encumber TERC's U.S. assets. *See* Power Declaration ¶ 7.

141. If TERC's assets are frozen, restrained, or executed upon by one creditor, then creditors as a whole will suffer. Similarly, it will be disastrous if the Joint Liquidators are unable to utilize the funds presently at their disposal to administer creditor claims and pursue TERC's claims against third parties as a consequence of a "restraining notice." McDonald Declaration ¶ 96.

142. TERC has claims against, is continuing profitable charters with, is obtaining insurance from, and will be owed receivables by, numerous entities that are subject to New York jurisdiction. The issuance of restraining notices and commencement of turnover proceedings will substantially disrupt these essential liquidation activities and harm creditors as a whole. McDonald Declaration ¶ 97.

143. Finally, Jade, one of the Rule B attachment creditors, has already demanded discovery in support of its contention that its Rule B attachment is valid. Jade's motion for discovery could be decided in the near future - before a decision on recognition or provisional relief is made by this Court. Such discovery will constitute a significant waste of limited estate resources in the event that recognition is granted. McDonald Declaration ¶ 98.

### 2. *Likelihood of Success on the Merits*

144. Petitioner incorporates by reference paragraphs 1-24 of this Petition, which fully explicates the factual and legal bases for the chapter 15 relief sought by Petitioner, as if fully set forth herein.

145. In summary, there is ample evidence and legal precedent to support the following findings:

a. that the Petitioners are foreign representatives;

b. that the BVI Liquidation is a foreign proceeding;

c. that TERC is a BVI entity that maintains its registered office in the BVI;

d. that TERC is entitled to a statutory presumption that the BVI is TERC's COMI;

e. that the facts of this case further support a finding that the BVI is TERC'S COMI because TERC's assets, accounts, books, records, and ongoing business are all in the BVI, and because TERC's creditors and counter-parties (i) had actual knowledge they were dealing with a BVI entity and (ii) are participating in the BVI Liquidation;

f. that the English High Court, Chancery Division, recognized the BVI Liquidation as a foreign main proceeding pursuant to English law based upon facts identical to those presented here;

g. that this Court and the Bankruptcy Court for the District of New Jersey have recently recognized BVI liquidation proceedings, similar to the BVI Liquidation at issue here, as foreign main proceedings;

h. that TERC is engaged in non-transitory economic activity in the BVI;

i. that section 1521 of the Bankruptcy Code authorizes this Court to issue a stay in the event that the BVI Liquidation is held to be a non-main proceeding;

j. that section 1507 of the Bankruptcy Code authorizes the application of foreign insolvency law;

k. that the BVI insolvency law, the 2003 Act, provides for a stay of all enforcement proceedings against TERC; and

l.   that this Petition otherwise meets all of the requirements for recognition under chapter 15 of the Bankruptcy Code.

### *3. Balance of Hardships*

146.   The equities weigh strongly in favor of granting Petitioners the requested provisional relief.   Temporarily staying the U.S. proceedings will prevent permanent and irreparable loss to the TERC estate, prevent interference with the BVI Liquidation activities, and potentially save substantial litigation costs.  By contrast, the U.S. Proceedings have been ongoing for many months, and there is not harm attendant to temporarily staying these proceedings pending this Court's decision on recognition.  The provisional relief sought will not prejudice any affected party's rights in the United States, and will maintain the *status quo* with respect to TERC's U.S. Assets.  Finally, it is important to note that all but one of the U.S. Actions were brought by foreign plaintiffs based upon claims that have no connection to the United States solely to obtain priority over other creditors.  The sole U.S.-based creditor seeks the same impermissible goal.  Accordingly, the Petitioners are entitled to the requested provisional relief.

## REQUEST FOR WAIVER OF LOCAL BANKRUPTCY RULE 9013-1(b)

147.   It is respectfully requested that this Court waive and dispense with the requirement set forth in Rule 9013-l(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that any motion filed shall be accompanied by a memorandum of law on the grounds that the relevant authorities in support of the Verified Petition and Application for Provisional Relief are contained herein.

## HEARING DATES AND NOTICES

148.     Section 1517(c) requires that "a petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time." Bankruptcy Rule 2002 sets forth a twenty-day notice requirement to parties in interest with certain exceptions to approve the Petition. If no objections to this Petition are filed by the date ordered for such objections, Petitioner requests that the Court enter the Proposed Order recognizing the Administration as a foreign main proceeding without a hearing pursuant to Local Rule 2002-1.

149.     Petitioners further request that the Court set the date for a hearing on their request for continuing provisional relief by order to show cause (the "Hearing Date") with *ex parte* relief. If no objections to this Application are filed by the date ordered for such objections, the Petitioners request that the Court enter the proposed order granting continuing provisional relief without a hearing, pursuant to Local Rule 2002-1.

150.     The Petitioners propose that once a Hearing Date has been set by the Court, notice will be given as reasonable and appropriate under the circumstances.    Specifically, the Petitioners propose serving copies of the Petition and related documents by United States mail, first-class postage prepaid, by overnight courier, by electronic mail, or by hand delivery where practicable, upon all known creditors and all other parties against whom relief is sought (or their counsel), including any such parties (or counsel) that have addresses outside the United States, in accordance with Bankruptcy Rules 1010 and 7004(a) and (b) within three (3) business days after the order to show cause is entered.

151.     Petitioners submit that such notice and service is reasonable and proper under the circumstances, and that no other or further notice is necessary or appropriate.

152.     No previous application for the relief requested in this Petition has been made in this or any other court in the United States.

**CONCLUSION**

WHEREFORE, the Petitioners respectfully request that this Court enter Orders, substantially in the form of Exs. A, B and C hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: New York, New York
       November 19, 2010

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: _____
    James H. Power, Esq.
    Barbra R. Parlin, Esq.
    Warren E. Gluck, Esq.
    HOLLAND & KNIGHT LLP
    31 West 52nd Street
    New York, New York 10019
    Telephone: 212-513-3200
    Telefax: 212-385-9010
    Email: james.power@hklaw.com
           barbra.parlin@hklaw.com
           warren.gluck@hklaw.com

*Counsel for the Joint Liquidators of
Transfield ER Cape Limited (BVI)*

**VERIFICATION**

     I, CASEY McDONALD, hereby certify and verify under penalty of perjury pursuant to 28 U.S.C. 1768 that (i) I am a duly appointed representative of the Joint Liquidators of Transfield ER Cape Limited (BVI) and am fully familiar with the matters set forth in the attached petition; and (ii) the factual statements set forth therein are true and correct to the best of my knowledge.

Dated: November 19, 2010

                                                        Casey McDonald