# Exhibit 11



CP 06-404

# Time Charter

**GOVERNMENT FORM**

*Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1. **This Charter Party**, made and concluded in ............ 6th ........ day of **December** ......... 19 **2006**
2. Between *IRON MINER SHIPCO LLC.* ............
3. Owners of the good *Marshall Islands* flag .. Steamship/Motorship .. *"MINERAL TEMSE" TBRN "IRON MINER" (See Clause 29- for vessel's description)* of ............
4. of ............ ~~tons gross register, of~~ ............ ~~tons net register, having engines of~~ ............ indicated horse power
5. and with hull, machinery and equipment in a thoroughly efficient state, and classed ............
6. as ............ of about ............ ~~cubic feet bale capacity, and about~~ ............ tons of 2240 lbs.
7. ~~deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one half percent of ship's deadweight capacity,~~
8. ~~allowing a minimum of fifty tons) on a draft of~~ ............ ~~feet~~ ............ ~~inches on~~ ............ Summer freeboard, inclusive of permanent bunkers,
9. ~~which are of the capacity of about~~ ............ tons of fuel, and capable of steaming, fully laden, under good weather
10. ~~conditions about~~ ............ ~~knots on a consumption of about~~ ............ tons of best Welsh coal - best grade fuel oil- best grade Diesel oil,
11. now trading ............
12. ............ and *TRANSFIELD ER CAPE LTD* ............ Charterers of the City of ..... B.V.I. ......

13. **Witnesseth**, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14. about *time charter period of minimum 58 to maximum 61 months in Charterers'option, trading always via safe port(s), safe*
15. *berth(s), safe anchorage(s) always afloat always within Institute Warranty Limits with coal or iron ore in bulk always excluding*
16. *DRI/DRP/HBI and sponge iron, same always within latest IMO recommendations* within below mentioned trading limits Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17. the fulfilment of this Charter Party.
18. Vessel to be placed at the disposal of the Charterers, at *on dropping last outward sea pilot Waiqaoqiao Yard, Shanghai, any time day or*
19. *night, Sundays and Holidays* ............
20. ~~in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as~~
21. ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 6. Vessel on her delivery to be~~
22. ~~ready to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted for the service, having water ballast, winches and~~
23. ~~donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same~~
24. ~~time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-~~
25. ~~dise, including petroleum or its products, in proper containers, excluding~~ *as provided in Clause 30.*
26. ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,~~
27. ~~all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports, in British North~~
28. ~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or~~
29. ~~Mexico, and/or South America,~~ ............ and/or Europe
30. ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between~~
31. ~~October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding when out of season, White Sea, Black Sea and the Baltic,~~
32. *Worldwide trading always within Institute Warranty Limits, always afloat via safe port(s), safe berth(s), safe anchorage(s) but*
33. *excluding Cuba, Vietnam, North Korea, Burma, Albania, Libya, Lebanon, Somalia, Syria, Cambodia, River Orinoco, (but boca*
34. *grande is allowed), River Amazon, Serbia and Montenegro including Rosovo, Persian Gulf (but trading Saudi Arabia and Bahrain are allowed), Russian Pacific, Sudan, Nigeria, Sierra Leone and any war zones as defined by Lloyds and countries not permitted to call as required by country of registry of the vessel, Israel trade is allowed (see Clause 112- Side letter content), but any additional premium for breach of trading warranty exclusion if any to be all for Charterers' account. The vessel not to trade countries boycotted by UN/USA. The vessel not to be engaged in shuttle trade such as North China/ South Korea.*
35. as the Charterers or their Agents shall direct, on the following conditions:
36. 1 That the Owners shall provide and pay for all provisions, *fresh water*, wages and consular shipping and discharging fees of the Crew; shall pay for the
37. insurance of the vessel, also for all the cabin, deck, engineroom and other necessary stores, including boiler water and maintain her class and keep
38. the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service. *See also Clauses 32/33/63 and 75.*
39. 2 That *whilst on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, Pilotage, Agencies, Commissions,
40. Consular Charges (except those pertaining to the Crew *or her Owners*), and all other usual expenses except those before stated, but when the vessel puts into
41. a port for causes for which *Owners*/vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42. illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this
43. charter to be for Charterers' account. All other fumigations to be for Charterers' account after vessel has been on charter for a continuous period
44. of six months or more. *(See Clause 33)*
45. Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46. Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards
47. for dunnage, they making good any damage thereto.
48. 3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel re-
49. board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ............ tons and not more than ............
50. ............ tons and to be re-delivered with not less than ............ tons and not more than ............

51 That the Charterers shall pay for the use and hire of the said Vessel at the rate of *(See Clause 37)*

52 ~~United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and~~

53 ~~stores, on~~ . ~~summer freeboard, per Calendar Month,~~ commencing on and from the day of her delivery, as aforesaid, and at

54 and after the same rate for any part of a month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

55 wear and tear excepted, to the Owners (unless lost) at *(See Clause 31)*.

56 unless otherwise mutually agreed Charterers are to give Owners ~~not less than~~ . ~~days~~

57 notice of vessels expected date of re-delivery, and probable port

58 5 Payment of said hire to be made ~~in New York in cash in United States Currency,~~ semi-monthly *15 days* in advance, and for the last *15 days* held

on account or

59 part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60 due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, ~~otherwise failing the punctual and regular payment of the~~

61 ~~hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-~~

62 ~~terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. Time to count from 7 a.m. on the working day~~

63 ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~

64 ~~to have the privilege of using vessel at once, such time used to count as hire. (See also Clause 37 and 40)~~

65 Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject

66 to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67 of such advances.

68 6. That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *safe* place *or safe anchorage* that Charterers or

their Agents may

69 direct, provided the vessel can safely lie always afloat at any time of tide, ~~except at such places where it is customary for similar size vessels to safely~~

70 ~~lie aground.~~

71 7 That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72 accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73 tackle, apparel, furniture, provisions, stores and fuel. Charterers have the privilege of passengers as far as accommodation allow, Charterers

74 paying Owners . . per day per passenger for accommodation and meals. However, it is agreed that in case any fines or extra expenses are

75 incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.

76 8 That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77 boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78 agency; and Charterers are to load, stow, and trim and discharge the cargo at their expense under the supervision *direction* of the Captain, who is to

*authorise Charterers or their agents* to sign Bills of Lading

79 cargo as presented, in conformity with Mate's or Tally Clerk's receipts.*(See also Clause 48)*

80 9 That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81 receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82 10 That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

83 with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the

84 rate of US$10.00 per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85 Clerks, Stevedore's Foreman, etc ; Charterers paying at the current rate of US$5.00 per meal, for all such victualling

86 11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87 Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88 terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-

89 sumption of fuel.

90 12 That the Captain shall use diligence in caring for ~~the ventilation~~ of the cargo.

91 13. ~~That the Charterers shall have the option of continuing this charter for a further period of~~ . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

92 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

93 ~~on giving written notice thereof to the Owners or their Agents~~ . . . . . . . . . . ~~days previous to the expiration of the first named term, or any declared option.~~

94 14 That if required by Charterers, time not to commence before *(See also Clause 95)* . . . . . . . . . . . . . . . . . . . and should vessel

95 not have given written notice of readiness on or before *(See also Clause 95)* . . . . . . . . . . . . . . . . . . . . . but not later than 4 p m Charterers or

96 their Agents to have the option of cancelling this Charter ~~at any time not later than the day of vessel's readiness.~~

97 15. That in the event of the loss of time from *default and/or* deficiency of men *including strike of Officers and/or crew or deficiency* or

stores, fire, breakdown or damages to hull, machinery or equipment,

98 grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause

99 preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by

100 defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

101 thereof, and all extra expenses shall be deducted from the hire.

102 16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103 returned to the Charterers at once The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104 Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted

105 The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

106 purpose of saving life and property.

107 17. ~~That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York,~~

108 ~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for~~

109 ~~the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.~~ *(See Clause 58)*

110 18. That the Owners shall have a lien upon all cargoes, and all sub-freights for any amounts due under this Charter, including General Aver-

111 age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112 deposit to be returned at once. Charterers will not suffer, nor permit to be construed, any lien or encumbrance incurred by them or their agents, which

113 might have priority over the title and interest of the owners in the vessel.

114 19 That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

115 Crew's proportion General Average shall be adjusted, stated and settled, according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule "F",

116 York-Antwerp Rules *1994 or any amendments thereto in London or New York at Charterers' option and as to matters not provided*

000437

*[or] by those rules according to the laws and usages at the port of London respectively New York 1924, at such port or place in the United States as may be selected by the carrier, and as to matters not provided for by these*

117 Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into
118 United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at
119 the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or
120 bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier
121 or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if
122 required, be made by the goods, shippers, consignees, or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the
123 carrier, be payable in United States money and be retained by the adjuster. When so remitted the deposit shall be held in a special account at the
124 place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in
125 United States money. *Hire shall not contribute to General Average.*

126 In the event of accident, danger, damage or disaster, before or after commencement of the voyage, resulting from any cause whatsoever,
127 whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the
128 goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,
129 losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the
130 goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or
131 ships belonged to strangers. *(See Clause 80)*

132 Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

133 20. Fuel used by the vessel while off hire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the
134 cost of replacing same, to be allowed by Owners. *(See Clause 75)*

135 21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a
136 convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from
137 time of last painting, and payment of the hire to be suspended until she is again in proper state for the service. *(See Clause 82)*

138 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
139 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
140 22. Owners shall maintain the gear of the ship as fitted, *but special gear for loading or discharging operations (such as fenders etc) to*
141 *be for Charterers'account* providing gear (for all derricks) capable of handling lifts up to three tons, also
142 providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for
143 same, otherwise necessary equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns and oil for
144 night work, and vessel to give use of electric light when so fitted, but any additional lights over these on board to be at Charterers' expense. The
144 Charterers to have the use of any gear on board the vessel. *Owners also to provide and maintain in efficient working order adequate electric*
*light for night work.*

145 23. Vessel to work night and day, if required by Charterers, and all winches to be at Charterers' disposal during loading and discharging.
146 steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,
147 deck hands and donkeyman for overtime work (not in accordance with the working hours and time stated in the ship's articles. If the rules of the
148 port, or labor unions, prevent crews from driving winches, shore Winchmen are to be paid by Charterers. In the event of a disabled winch or winches, or
149 insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned
150 thereby.
151 24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained
152 in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels,
153 etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both
154 of which are to be included in all bills of lading issued hereunder.

155 (·) U.S.A. Clause Paramount
156 This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April
157 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of
158 any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading
159 be repugnant to said Act to any extent, such term shall be void to that extent, but no further.
160 Both-to-Blame Collision Clause
161 If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the
162 Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried
163 hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss
164 or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-
165 carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her
166 owners as part of their claim against the carrying ship or carrier.
167 25 The vessel shall not be required to enter any ice-bound port *or to force Ice or to follow ice breakers*, or any port where lights or light-ships
have been or are about to be with-
168 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
169 port or to get out after having completed loading or discharging.
170 26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171 navigation of the vessel, *acts of pilots and tugboats*, insurance, crew, and all other matters, same as when trading for their own account
172 27 A commission of *1.25* 2 1/2 per cent is payable by the Vessel and Owners to *Arrow Asia Shipbrokers Limited for division*
173 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
174 on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175 28. An address commission of *3.75* 2 1/2 per cent payable to *Charterers* . . . . . . on the hire earned and paid under this Charter.

*Rider Clauses Nos. 29-116 both inclusive as attached are deemed to be fully incorporated in this Charter Party.*

OWNERS:

Quintana Maritime Limited
Nikos Frantzeskakis
Chief Commercial &
Operations Officer

CHARTERERS:
For and on behalf of
Transfield ER Cape Limited

Authorised Signator(s)

# Exhibit 12



**FIRST ORIGINAL**

16th April, 2008

# *ADDENDUM NO. 1*

# *TO*

# *"IRON MINER"*

# *CHARTER PARTY DATED 6TH DECEMBER,2006*

IT HAS this day of 16th April, 2008 been mutually agreed between *IRON MINER SHIPCO LLC.* as Owners (hereinafter referred to as "Owners") and *TRANSFIELD ER CAPE LIMITED, B.V.I.* as Charterers (hereinafter referred to as "Charterers") that:

The Beneficiary's bank account changed as follows:

BANK : Nordea Bank Finland PLC London Branch

SWIFT code: NDEAGB2L

Account Name : IRON MINER SHIPCO LLC

Account Number: 00-437-32-201

IBAN : GB 93 NDEA 404 878 437 32 201

Us corresponding Bank :

To JP Morgan Chase Bank New York

SWIFT code: CHASUS33

ABA 021000021

Kindly note effective today hire payments should be made to above bank account.

All other terms and conditions remain unchanged as per Iron Miner/Transfield ER Charter Party dated 6th December, 2006.

**For Owners:**                          **For Charterers:**

For and on behalf of
Transfield ER Cape Limited

(Authorized Signature(s))

# Exhibit 13



SECOND ORIGINAL

# Time Charter

GOVERNMENT FORM
*Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1 **This Charter Party**, made and concluded in *20th* .......................................... day of *April, 2007* ............ 19....
2 Between *Bochmar International N.V.* ......................................................................................................................
3 Owners of the good *Newbuilding* ~~Steamship/Motorship~~ M.V. *"Bochmar TBN"* ............ of *description of the vessel see clause 29*
4 of.......... ~~tons gross register, and~~ ............ ~~tons net register, having engines of~~ ............ ~~indicated horse power~~
5 ~~and with hull, machinery and equipment in a thoroughly efficient state, and classed~~
6 ~~at~~ .......... ~~of about~~ .......... ~~cubic feet bale capacity, and about~~ .......... ~~tons of 2240 lbs.~~
7 ~~deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one half percent of ship's deadweight capacity,~~
8 ~~allowing a minimum of fifty tons) on a draft of~~ .......... ~~feet~~ .......... ~~inches on~~ .......... ~~Summer freeboard, inclusive of permanent bunkers,~~
9 ~~which are of the capacity of about~~ .......... ~~tons of fuel, and capable of steaming, fully laden, under good weather~~
10 ~~conditions about~~ .......... ~~knots on a consumption of about~~ .......... ~~tons of best Welsh coal - best grade Diesel oil,~~
11 ~~now~~ ..........................................................................................................................................................
12 ................... and *Transfield ER Cape Limited* ................... Charterers of the City of *B.V.I.* ...................

13 **Witnesseth**, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14 about ......*time charter period of minimum 59 to maximum 61 months in Charterers' option, trading always via safe port(s), safe*
15 *berth(s), safe anchorage(s) always afloat, always within Institute Warranty Limit with coal or iron ore in bulk always excluding*
*DRI/DRIP/HBI and Sponge Iron same always within latest IMO recommendations. Charterers have the right to load*
*non-hazardous dry cargo in bulk but always excluding grain and/or grain products. All cargoes to loaded/carried and*
*discharged in accordance to the appropriate I.M.O. regulations. In any event, Charterers are to request Owners prior approval*
*to load any other cargo than Iron ore and coal in bulk. Such prior approval not to be unreasonably withheld. (otherwise see*
*cargo exclusion on page 14 of the Charter Party)* within below mentioned trading limits.
16 Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17 the fulfillment of this Charter Party.
18 Vessel to be placed at the disposal of the Charterers, at *on dropping last outward sea pilot safe port or in Owners'option ex Dockmaster*
19 *Singapore/Japan range including P.R. China,* any time, day or night, Sundays and Holidays included ..........................................
20 ~~in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as~~
21 ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 6.~~ Vessel on her delivery to be
22 ready to receive *any permissible* cargo with clean-swept holds and tight, staunch, strong and in every way fitted for the service, having water ballast, winches and
23 donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same
24 time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-
25 dise, ~~including petroleum or its products, in proper containers, excluding~~ ...*as provided in Clause 58*.........................................
26 (vessel is not to be employed in the carriage of Live Stock, but ~~Charterers are to have the privilege of shipping a small number of such of their stock~~
27 ~~all necessary fittings and other requirements to be for account of Charterers)~~, in such lawful trades, between safe port and/or safe ports in ~~British North~~
28 ~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or~~
29 ~~Mexico, and/or South America always safely afloat always within~~ *Institute Warranties Limits. See also Clause 54 and 57* ~~and/or Europe~~
30 ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between~~
31 ~~October 31st and May 15th, Hudson Bay and all unsafe ports, also excluding, when out of season, White Sea, Black Sea and the Baltic,~~
32 ..........................................................................................................................................................
33 ..........................................................................................................................................................
34 ..........................................................................................................................................................
35 as the Charterers or their Agents shall direct, on the following conditions:
36     1.    That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the Crew *and all other charges*
*related to the Master, Officer and crew*; shall pay for the
37 insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water *also for garbage removal,*
*Lubricating oil* said maintain her class and keep
38 the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service.
39     2.    That *whilst on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, *compulsory* Pilotages, *also*
*non- compulsory pilot on occasions but subject to Charterers' approval,* Agencies, Commissions,
40 Consular Charges (except those pertaining to the Crew *or her Owners*), and all other usual expenses except those before stated, but where the vessel puts into
41 a port for causes for which *Owners/vessel* is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42 illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this
43 charter to be for Charterers account. ~~All other fumigations to be for Charterers account after vessel has been on charter for a continuous period~~
44 ~~of six months or more.~~
45 Charterers are to provide necessary dunnage and shifting boards, also any extra *cargo fittings* requisite for a special trade or unusual ~~cargo,~~ but
46 Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using ~~shifting boards~~
47 for dunnage, they making good any damage thereto.
48     3.    ~~That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining~~

~~joing as the vessel at the current prices in the respective parts, the vessel to be delivered with not less than~~ ................................... ~~tons and not more than~~

50 ................................... ~~tons and to be re-delivered with not less than~~ ................................... ~~tons and not more than~~ ................................... ~~tons.~~ *See Clause 43.*

51     4.    That the Charterers shall pay for the use and hire of the said Vessel at the rate of *See Clause 38.*

52 ................................... ~~United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and~~

53 ~~stores, on~~ ................................... ~~summer freeboard, per Calendar Month,~~ commencing on and from the day *time of her* delivery, as aforesaid, and at

54 and after the same rate for any part of a *day* ~~month;~~ hire to continue until the hour of the day of her re-delivery ~~to like good order and condition,~~ *in substantially the same condition as on delivery,* ordinary

55 wear and tear excepted, to the Owners (unless lost) at *See Clause 71.*

56 ................................... unless otherwise mutually agreed. ~~Charterers are to give Owners not less than~~ ................ ~~days~~

57 ~~notice of vessels expected date of re-delivery, and probable port~~ *See Clause 59.*

58     5.    Payment of said hire to be made in *T/T remittance into the Owners' designated account* New York in cash in United States Currency, semi-monthly in advance, and for the last half month or '

59 past of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60 due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61 hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62 terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. Time to count as *from vessel's delivery* ~~from 7 a.m. on the working day~~

63 ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~

64 ~~to have the privilege of using vessel at once, such time used to count as hire.~~

65     Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject

66 to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67 of such advances.

68     6.    That the cargo or cargoes be laden and/or discharged in any dock or at any wharf *or anchorage* or place that Charterers or their Agents may

69 direct, provided the vessel can safely lie always afloat at any time of tide, ~~except at such places where it is customary for similar size vessels to safely~~

70 ~~lie aground.~~

71     7.    That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72 accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73 tackle, apparel, furniture, provisions, stores and fuel. Charterers have the privilege of passengers as far as accommodations allow, Charterers

74 paying Owners *US$5.00* ................................... per day per passenger for accommodation and meals. However, it is agreed that in case any fines or extra expenses are

75 incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.

76     8.    That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77 boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and *equipment*

78 agency; and Charterers are to load, stow, *and discharge* and trim the cargo at their expense under the supervision, *direction and responsibility* of the Captain, who is to sign *or is to authorize Charterers or their agent to* Bills of Lading for

79 cargo as presented, in conformity with Mate's or Tally Clerk's receipts *without prejudice to this Charter Party (see clause 56 and 81).*

80     9.    That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81 receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82     10.   That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

83 with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the

84 rate of $1.00 *US$5.00* per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85 Clerks, Stevedore's Foreman, etc., Charterers paying at the current rate per meal, for all such victualling *a lumpsum of US$4.00 per meal per person.*

86     11.   That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87 Captain shall keep a full and correct Log *in English* of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88 terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-

89 sumption of fuel.

90     12.   That the Captain shall use diligence in caring for the ventilation of the cargo. .

91     13.   That the Charterers shall have the option of continuing this charter for a further period of *See line 14/15*

92 ...................................

93 on giving written notice thereof to the Owners or their Agents ................................... days previous to the expiration of the first-named term, or any declared option.

94     14.   That if required by Charterers, time not to commence before *00:01 hours local time 1st April,2008* and should vessel

95 not have given written notice of readiness on or before *24:00 hours local time 20th July, 2008* ~~but not later than 4 p.m.~~ Charterers or

96 their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. *Owners to narrow to a 45 days spread giving 60 days notice and Owners to further narrow to a 25 days spread with giving 30 days notice. Charterers 'or their agent to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.*

97     15.   That in the event of the loss of time from deficiency *sickness, strike accident or default of master, Officer or crew* of men or

98 *deficiency* of stores, fire, breakdown or damages to hull, machinery or equipment,

99 grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause

whatsoever preventing the full *rise of the vessel to the Charterers* ~~working of the vessel,~~ the payment of hire shall cease for the time thereby lost; *and all extra expenses incurred including bunkers consumed during perold of suspended hire shall be for Owners' account* and if upon the voyage the speed be reduced by

100 defect/*deficiency* in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

101 thereof, and all extra expenses shall be deducted from the hire.

102     16.   That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103 returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104 Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

105     The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

106 purpose of saving life and property *in case of property* Owners and Charterers to share equally return of salvage.

107     17.   That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to *two* three persons at ................................... York,

000472



**Exhibit 14**

| ORIGINAL |
| --- |

# CONTRACT OF AFFREIGHTMENT
## BRAZIL-CHINA

OWNERS       : BHP BILLITON MARKETING AG OF BAAR, SWITZERLAND

CHARTERERS   : TRANSFIELD ER CAPE LIMITED BVI

DATED        : 22ND MAY, 2008

000506

This Contract, dated *22nd May, 2008* is concluded by and between *TRANSFIELD ER CAPE LIMITED, BVI* as Charterers (hereinafter referred to as    harterers? , and *BHP BILLITON MARKETING AG BAAR, SWITZERLAND* as Disponent Owners (hereinafter referred to as wners? .

## WITNESSETH THAT:

This is Contract of Afreightment with Owners for the shipment(s) of iron ore from one safe port, one-two safe berth(s) Tubarao, or in Charterers' option to load one-two safe berth(s), one safe port in Brazil to one safe port, one-two safe berth(s) Qingdao, or in Charterers' option to discharge one-two safe berth(s), one-two safe port(s) in P.R. China. Differentials other loading port(s) in Brazil/Discharging Port(s) in P.R. China at same Time Charter Equivalent as for Tubarao/Qingdao, without taking into account any positional advantage/disadvantage v.s. Qingdao.

**WHEREAS,** Charterers undertake to provide and Owners undertake to transport on the terms and conditions are set forth as follows.

### CLAUSE 1    DEFINITIONS

In this Contract, unless otherwise defined, the terms should have following meanings:

1.A.   "Ore" means *iron ore* in bulk including iron ore concentrates in bulk, and fine, pellets in bulk. Their quality, nature and shipping conditions are to be in accordance with latest IMO regulations/ recommendations, but always excluding DRI/DRIP/HBI/Sponge iron maximum 2 grades.

1.B.   "Dollars" and "Cents" mean respectively dollars and cents in lawful money of the United States of America.

1.C.   SIT? means Baosteel International Trading Corporation.

1.D.   ontract period? means the period of commencing on *1st January, 2009* and ending on *31st December, 2009* of vessel   arrival at loading port NOR tendered basis.

1.E.   . ontract cargo? means a cargo of iron ore from one safe port, one-two safe berth(s) Tubarao, or in Charterers' option to load one-two safe berth(s), one safe port in Brazil to one safe port, one-two safe berth(s) Qingdao, or in Charterers' option to discharge one-two safe berth(s), one-two safe port(s) in P.R. China.

000507

**Exhibit 15**

| ORIGINAL |

# CONTRACT OF AFFREIGHTMENT
## BRAZIL-CHINA

OWNERS     : BHP BILLITON MARKETING AG OF BAAR, SWITZERLAND

CHARTERERS  : TRANSFIELD ER CAPE LIMITED BVI

DATED       : 27TH MAY, 2008

000523

This Contract, dated 27TH *May, 2008* is concluded by and between *TRANSFIELD ER CAPE LIMITED, BVI* as Charterers (hereinafter referred to as   harterers? , and *BHP BILLITON MARKETING AG BAAR, SWITZERLAND* as Disponent Owners (hereinafter referred to as wners? .

## WITNESSETH THAT:

This is Contract of Afreightment with Owners for the shipment(s) of iron ore from one safe port, one-two safe berth(s) Tubarao, or in Charterers' option to load one-two safe berth(s), one safe port in Brazil to one safe port, one-two safe berth(s) Qingdao, or in Charterers' option to discharge one-two safe berth(s), one-two safe port(s) in P.R. China. Differentials other loading port(s) in Brazil/Discharging Port(s) in P.R. China at same Time Charter Equivalent as for Tubarao/Qingdao, without taking into account any positional advantage/disadvantage v.s. Qingdao.

**WHEREAS,** Charterers undertake to provide and Owners undertake to transport on the terms and conditions are set forth as follows.

### CLAUSE 1   DEFINITIONS

In this Contract, unless otherwise defined, the terms should have following meanings:

1.A.   "Ore" means *iron ore* in bulk including iron ore concentrates in bulk, and fine, pellets in bulk. Their quality, nature and shipping conditions are to be in accordance with latest IMO regulations/ recommendations, but always excluding DRI/DRIP/HBI/Sponge iron maximum 2 grades.

1.B.   "Dollars" and "Cents" mean respectively dollars and cents in lawful money of the United States of America.

1.C.   SIT? means Baosteel International Trading Corporation.

1.D.   ontract period? means the period of commencing on *1st January, 2009* and ending on *31st December, 2009* of vessel   arrival at loading port NOR tendered basis.

1.E.   ontract cargo? means a cargo of iron ore from one safe port, one-two safe berth(s) Tubarao, or in Charterers' option to load one-two safe berth(s), one safe port in Brazil to one safe port, one-two safe berth(s) Qingdao, or in Charterers' option to discharge one-two safe berth(s), one-two safe port(s) in P.R. China.

# Exhibit 16

# COVER NOTE

Cover Note No: 1262767 for Policy No: 2039318??
Protection & Indemnity including Full Insurance
Charterers (Combined)

TRANSFIELD ER CARE LTD, BVI

The Insurance is effective as from noon GMT 20 February 2010 to noon GMT 20 February 2011

000540


# ⚓ SKULD

Assuranceforeningen SKULD (Gjensidig)
SKULD Mutual Protection and Indemnity Association (Bermuda) Ltd.
P.O Box 1376 Vika, N-0114 Oslo, Norway

## Cover Note No. **1262767** for Policy No. **20393181**
### Protection & Indemnity Insurance/Hull Insurance
### C h a r t e r e r (Combined)

This is to certify that:

## Assured

TRANSFIELD ER CAPE LTD, BVI                                              Charterer
Has been entered as Assured of the Association in respect of the Assured's interest as time, voyage, space or
slot charterer of a vessel.

The Insurance is effective as from: noon GMT 20 February 2010 to noon GMT 20 February 2011

*This Cover Note is evidence only of the contract of indemnity insurance between the above Assured and the Association and shall not be construed as evidence of any undertaking, financial or otherwise, on the part of the Association to any other party.*

*In the event that the Assured tenders this Cover Note as evidence of insurance under any applicable law relating to financial responsibility, or otherwise shows or offers it to any other party as evidence of insurance, such use of this Certificate by the Assured is not to be taken as any indication that the Association thereby consents to act as guarantor or to be sued directly in any jurisdiction whatsoever. The Association does not so consent.*

*The P&I insurance provided by the Association for the vessel is governed by the Association's Statutes and Rules and the Charterers' Liability to Hull insurance is governed by the terms in the enclosed addendum, except to the extent that they are modified by the special terms set out below. Each Assured and Co-Assured is bound by and deemed to know the Statutes and Rules. Assureds and Co-Assureds should ensure that they read the Statutes and Rules which are distributed by the Association. Assureds and Co-Assureds who do not have copies of the Statutes and Rules should ask the Association to provide them.*

*The limit of insurance (Charterers' Combined P&I/CLH) is in accordance with the terms in the enclosed addendum.*

*All of the Association's Statutes and Rules are important, but particular attention is drawn to:*

*Statute 2 which establishes that all disputes between a Member, Joint Member, Co-Assured and the Association shall be governed by Norwegian Law with the exception that the Norwegian Insurance Contracts act of 1998 shall not apply. All disputes shall be decided by Arbitration in accordance with Norwegian Law, and the arbitration proceedings shall take place in Oslo.*

*Hong Kong, 17 September 2010*

000541


**SKULD**

Rule 1, 4 and 45 which deal with Members, Joint Members, Co-Assureds, Affiliates and Fleet entries and the payment of premiums, calls and other sums. Joint Members and Co-Assureds shall be jointly and severally liable in respect of all premiums, calls and other sums due to the Association. Members or Joint Members named in the Cover Note for one or more ships forming part of a Fleet entry shall be jointly and severally liable in respect of premiums, calls and other sums due to the Association for any or all vessels in the fleet.

Rule 28 which provides that the insurance is one of indemnity only. The Member, Joint Member, Co-Assured has no right to recover funds from the Association for insurance claims unless and until he has first paid the same.

Insurance tax may be applicable in various jurisdictions. Please note that it is the insured and not the Association, who is responsible to pay this tax.

Please note that in accordance with the Norwegian Insurance Contract Act § 3-4 and our rule 3.2 this cover can be terminated by giving written notice to the Association prior to the 20 January or minimum 30 days prior to expiry of current insurance cover. If such termination is not sent the cover will automatically be renewed.

President and Chief Executive Office

Hong Kong, 17 September 2010

000542

# Exhibit 17

## STATUTORY DEMAND UNDER SECTION 155 OF
## THE INSOLVENCY ACT, 2003

> **WARNING:** This is an important document. This
> Demand must be dealt with within 21 days after
> its service upon the company or a winding-up
> order could be made in respect of the company.
>
> Please read the demand and notes carefully.

### DEMAND

To:        Transfield ER Cape Limited (the "Company")

Address:     c/o Portcullis TrustNet Chambers
Ellen Skelton Building
P.O. Box 3444
Road Town, Tortola
British Virgin Islands VG 1110

This demand is served upon you by the Creditors:

Name:       First Creditor: SK Shipping Europe Plc

Address:     24 Cornhill, 5th Floor
London, England EC3V 3ND, United Kingdom

Name:       Second Creditor: SK Shipping Co Limited

Address:     SK Namsan Building, 19th Floor
267 Namdaemunro 5-ga
Jung-gu, Seoul, Korea

The First Creditor claims that the Company owes the sum of US$2,000,000 plus
interest and costs, full particulars of which are set out on page 2.

The First and Second Creditors claim that the Company owes the sum of
US$3,326.02, full particulars of which are set out on page 2.

The Creditors demand that the Company do pay the above debt or secure or
compound for it to the Creditors' satisfaction.

1

000549

Signature: _Susan V. Demers_

Name: Susan V. Demers
Price Findlay & Co.

Date: April 14, 2010

Position with or Relationship to the Creditors: Solicitors

I am authorised to make this demand on the Creditors' behalf.

Address: Tropic Isle Building
P.O. Box 3331
Road Town, Tortola
British Virgin Islands VG 1110

Telephone number: 1-284-494-6514

## PARTICULARS OF DEBT

(These Particulars must include (a) when the debt was incurred, (b) the
consideration for the debt (or if there is no consideration the way in which it
arose) and (c) the amount due as at the date of the demand.)

| Description of Debt | Amount |
|---|---|
| Final Arbitration Award made by Robert Gaisford on 23 March, 2010 to the First Creditor (a copy of which is annexed hereto and made a part hereof) in respect of the final instalment due under the Settlement Agreement dated 13 January, 2009 entered into by Transfield ER Cape Limited and SK Shipping Europe Plc and SK Shipping Co Limited | US$2,000,000 |
| Interest thereon at the rate of 4% per annum and pro rata, compounded at three-monthly rests from 15 December, 2009 to date of payment in accordance with the terms of the Final Arbitration Award | To be quantified |

2

099550

| Costs in accordance with the terms of the Final Arbitration Award | To be quantified |
|---|---|
| Costs of the Arbitrator in accordance with the terms of the Final Arbitration Award | US$3,326.02, being the USD equivalent of £2,055.00, plus interest in accordance with the terms of the Final Arbitration Award |

## Part A

The individual or individuals to whom any communication regarding the demand may be addressed is/are:

Name: Susan V. Demers
Price Findlay & Co.

Address: Tropic Isle Building
P.O. Box 3331
Road Town, Tortola
British Virgin Islands VG 1110

Telephone number: 1-284-494-5514

## Part B

For completion if the Creditor is entitled to the debt by way of assignment.

| | Name | Date(s) of Assignment |
|---|---|---|
| Original Creditor | | |
| Assignees | | |

3

000551

### How to comply with a statutory demand.

If the Company wishes to avoid a winding-up petition being presented, it must pay the debt shown on Page 1, particulars of which are set out on Page 2 of this notice, within the period of 21 days after its service upon the Company.

Alternatively, the Company can attempt to come to a settlement with the Creditor. To do this, the Company should:

- Inform the individual (or one of the individuals) named in Part A above immediately that it is willing and able to offer security for the debt to the Creditor's satisfaction; or

- Inform the individual (or one of the individuals) named in Part A above immediately that it is willing and able to compound for the debt to the Creditor's satisfaction.

If the Company disputes the demand in whole or in part, it should:

- Contact the individual (or one of the individuals) named in Part A above immediately.

- Apply to the Court to set aside the demand in accordance with Section 156 of the Insolvency Act, 2003.

If the Company wishes to apply to the Court to set aside the demand in accordance with Section 156 of the Insolvency Act, 2003, it must make such application within 14 days after the date of service on it of this document.

### REMEMBER!

**The Company has only 21 days after the date of service on it of this document before the Creditor may present a winding-up petition.**

**The Company has only 14 days after the date of service on it of this document to apply to the Court to set aside the demand in accordance with Section 156 of the Insolvency Act, 2003.**

4

099552

# Exhibit 18



# China Earth Shipping Inc.

17 September 2010

To whom it may concern

Dear Sir/Madam

**Claim against Transfield ER Cape Limited**
**Judgement BVI HCV (Com) 2010/0066 dated 13 July 2010**

We are a creditor of Transfield ER Cape Limited ("TERC") in the sum of US$7,642,281.60 pursuant to a judgement BVI HCV (Com) 2010/0066 date 13 July 2010.

We are informed that the board of directors of TERC (the "Board") intends to instruct British Virgin Islands counsel to make an application to the High Court of the British Virgin Islands for the appointment of provisional liquidators over TERC in accordance with section 170 of the British Virgin Islands Insolvency Act 2003 ("the Act") in order to implement a financial restructuring of TERC for the benefit of its creditors as a whole.

We understand that the Board has been in discussions with the proposed provisional liquidators (the "Provisional Liquidators") for some time, and that a proposal is in the process of being formulated whereby the members of the Board will assist the Provisional Liquidators in effecting the financial restructuring referred to above via a Company Creditors Arrangement, the detailed terms of which remain to be confirmed (the "Restructuring"). We also understand that the Restructuring is currently expected to give rise to a return to unsecured creditors of approximately twenty-seven cents per dollar of their claims, and that this is significantly greater than the realisations which such creditors could expect to receive out of formal liquidation proceedings which we understand are the most likely alternative to the appointment of the Provisional Liquidators and the implementation of the Restructuring.

We write to confirm our in-principle support for the appointment of the Provisional Liquidators over Transfield, for the proposed Restructuring. We also confirm our consent for this letter being produced to a British Virgin Islands court as evidence of such support.

Should you require any further information, please let us know.

Yours sincerely,

China Earth Shipping inc

000553

# China Sun Shipping Inc.

17 September 2010

To whom it may concern

Dear Sir/Madam

**Claim against Transfield ER Cape Limited**
**Judgement BVI HCV (Com) 2010/0067 dated 13 July 2010**

We are a creditor of Transfield ER Cape Limited ("TERC") in the sum of US$43,377,707 pursuant to a judgement BVI HCV (Com) 2010/0067 date 13 July 2010.

We are informed that the board of directors of TERC (the "Board") intends to instruct British Virgin Islands counsel to make an application to the High Court of the British Virgin Islands for the appointment of provisional liquidators over TERC in accordance with section 170 of the British Virgin Islands Insolvency Act 2003 ("the Act") in order to implement a financial restructuring of TERC for the benefit of its creditors as a whole.

We understand that the Board has been in discussions with the proposed provisional liquidators (the "Provisional Liquidators") for some time, and that a proposal is in the process of being formulated whereby the members of the Board will assist the Provisional Liquidators in effecting the financial restructuring referred to above via a Company Creditors Arrangement, the detailed terms of which remain to be confirmed (the "Restructuring"). We also understand that the Restructuring is currently expected to give rise to a return to unsecured creditors of approximately twenty-seven cents per dollar of their claims, and that this is significantly greater than the realisations which such creditors could expect to receive out of formal liquidation proceedings which we understand are the most likely alternative to the appointment of the Provisional Liquidators and the implementation of the Restructuring.

We write to confirm our in-principle support for the appointment of the Provisional Liquidators over Transfield, for the proposed Restructuring. We also confirm our consent for this letter being produced to a British Virgin Islands court as evidence of such support.

Should you require any further information, please let us know.

Yours sincerely,

China Sun Shipping Inc

# China Saturn Shipping Inc.

17 September 2010

To whom it may concern

Dear Sir/Madam

**Claim against Transfield ER Cape Limited**
**Charter Party dated 28th March 2008**

We are a creditor of Transfield ER Cape Limited ("TERC") in the sum of US$89,220,926.03 in the matter of Charter Party dated 28th March 2008 with TERC.

We are informed that the board of directors of TERC (the "Board") intends to instruct British Virgin Islands counsel to make an application to the High Court of the British Virgin Islands for the appointment of provisional liquidators over TERC in accordance with section 170 of the British Virgin Islands Insolvency Act 2003 ("the Act") in order to implement a financial restructuring of TERC for the benefit of its creditors as a whole.

We understand that the Board has been in discussions with the proposed provisional liquidators (the "Provisional Liquidators") for some time, and that a proposal is in the process of being formulated whereby the members of the Board will assist the Provisional Liquidators in effecting the financial restructuring referred to above via a Company Creditors Arrangement, the detailed terms of which remain to be confirmed (the "Restructuring"). We also understand that the Restructuring is currently expected to give rise to a return to unsecured creditors of approximately twenty-seven cents per dollar of their claims, and that this is significantly greater than the realisations which such creditors could expect to receive out of formal liquidation proceedings which we understand are the most likely alternative to the appointment of the Provisional Liquidators and the implementation of the Restructuring.

We write to confirm our in-principle support for the appointment of the Provisional Liquidators over Transfield, for the proposed Restructuring. We also confirm our consent for this letter being produced to a British Virgin Islands court as evidence of such support.

Should you require any further information, please let us know.

Yours sincerely,

China Saturn Shipping Inc

090555



中远散货运输有限公司
COSCO BULK CARRIER CO., LTD.

20 September 2010

To whom it may concern

Dear Sir/Madam

**Claim against Transfield ER Cape Limited**
**M.V. Anangel Odyssey – Charter Party dated 21 May 2008**
**M.V. Amazon – Charter Party dated 31 July 2006**

We are a creditor of Transfield ER Cape Limited ("TERC") in the sum of US$491,746.10 in the matter of Charter Party of M.V. Anangel Odyssey dated 21 May 2008 and Charter Party of M.V. Amazon dated 31 July 2006.

We are informed that the board of directors of TERC (the "**Board**") intends to instruct British Virgin Islands counsel to make an application to the High Court of the British Virgin Islands for the appointment of provisional liquidators over TERC in accordance with section 170 of the British Virgin Islands Insolvency Act 2003 ("**the Act**") in order to implement a financial restructuring of TERC for the benefit of its creditors as a whole.

We understand that the Board has been in discussions with the proposed provisional liquidators (the "**Provisional Liquidators**") for some time, and that a proposal is in the process of being formulated whereby the members of the Board will assist the Provisional Liquidators in effecting the financial restructuring referred to above via a Company Creditors Arrangement, the detailed terms of which remain to be confirmed (the "**Restructuring**"). We also understand that the Restructuring is currently expected to give rise to a return to unsecured creditors of approximately twenty-seven cents per dollar of their claims, and that this is significantly greater than the realisations which such creditors could expect to receive out of formal liquidation proceedings which we understand are the most likely alternative to the appointment of the Provisional Liquidators and the implementation of the Restructuring.

We write to confirm our in-principle support for the appointment of the Provisional Liquidators over Transfield, for the proposed Restructuring. We also confirm our consent for this letter being produced to a British Virgin Islands court as evidence of such support.

Should you require any further information, please let us know.

Yours sincerely,

*For and on behalf of*
COSCO BULK CARRIER CO., LTD.
中远散货运输有限公司

COSCO Bulk Carrier Company Ltd
*Authorised Signatory*

天津市河北区远洋广场 1 号 邮编: 300010 电话(Tel): (+86 22) 2420 6666 传真(Fax): 2420 6868
No.1 Ocean Shipping Plaza, Hebei District, Tianjin 300010, P.R. China

099556



**Exhibit 19**



# Transfield ER Cape Limited
c/o Transfield Ermstown Ltd. as agent
Rm.2338 Sun Hung Kai Centre,
30 Harbour Rd, Wanchai, Hong Kong.
Tel: (852) 2827 0888 Fax: (852) 2827 9832

Armada (Singapore) Pte. Ltd.

Unit no. # 17-05/06
6 Battery Road
048581
Singapore

Statement Date : 14Jan2009
Statement No : Proforma
Our Reference : CP0716V6

Payment No. : 6

| HIRE STATEMENT | | | |
|---|---|---|---|
| **C/P Date:** 25Sep2008 | | Voyage no.: | CP0716V6 |
| **Vessel:** BOSTON | | | |
| **Charterer:** Armada (Singapore) Pte. Ltd. | | | |
| NOTE ALL VALUES ARE IN USD | | DR | CR |
| Charter Hire: 27Dec2008 17:00 to 6Jan2009 23:59 (10.290972 Days) @ 55,000.00 USD Daily | | 566,003.47 | |
| Address Commission of 3.750% | | | 21,225.13 |
| CVE: 27Dec2008 17:00 to 6Jan2009 23:59 (10.290972 Days) @ 1,500.00 USD per 30 day | | 514.55 | |
| Net Debits / Credits | | 566,518.02 | 21,225.13 |
| BALANCE DUE TO OWNERS | | | 545,292.89 |
| | | 566,518.02 | 566,518.02 |
| | | | E.&O.E. |

*Please remit according to the details below quoting Vessel Name, Our Reference and Statement no.*

THE HONGKONG AND SHANGHAI BANKING CORP.LTD., HONG KONG
SUN HUNG KAI CENTRE BRANCH, HONGKONG
SWIFT CODE: HSBCHKHHHKH
USD A/C NO.: 400-307246-274
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IN FAVOUR OF: TRANSFIELD ER LIMITED
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Claim for losses arising out of early re-delivery

| | |
|---|---|
| Owner: | Transfield ER Cape Limited |
| Charterer: | Armada (Singapore) Pte Limited |
| | |
| Vessel: | XIN WANG HAI |
| Charterparty date: | 15th August 2008 |
| Charter Period: | "minimum 35 months" |
| Daily hire rate: | $50,000.00 |
| Daily hire rate less commission: | $48,125.00 |
| | |
| Delivery time: | 04/10/2008 09:20 |
| Earliest redelivery time: | 04/09/2009 09:20 |
| Actual redelivery time: | 09/01/2009 12:05 |
| Days remaining under charter: | 237.89 |
| | |
| BCI Timecharter average at redelivery time: | 13,274 |
| Applicable market rate less commission: | $12,776.23 |
| | |
| Difference between charter rate and market rate ("Claim Rate"): | $35,348.78 |
| | |
| Time remaining x Claim Rate: | $8,408,958.07 |
| | |
| Plus | |
| | |
| Amount payable upto time of redelivery: | $430,812.73 |
| | |
| TOTAL CLAIM = | $8,839,770.80 |



# Transfield ER Cape Limited

c/o Transfield Resources Ltd as agent

Rm 2338 Sun Hung Kai Centre,
30 Harbour Rd, Wanchai, Hong Kong,
Tel: (852) 2827 0888  Fax: (852) 2587 9652

## XIN WANG HAI

### FINAL HIRE STATEMENT

| | | | |
|---|---|---|---|
| Charterer | : Armada (Singapore) Pte. Ltd. | Owner | : Transfield ER Cape Ltd |
| Reference | : CP0348V8 | | |
| CP Date | : 18Aug2008 | | |
| Print Date | : 13Jan2009 12:53 | Printed By | : CONC |
| Brokers | : Arrow Asia HK | | |
| Voyage | : CP0348V8 | | |
| Delivery Port | : QingDao | | |
| Redelivery | : ShangHai | | |

Summary of Items in DR / CR (USD)

| | DR | CR |
|---|---|---|
| Plus Hire 828.114583 days between 4Oct2008 9:20 and 9Jan2009 12:06 at 60,000.00 USD per day | 41,406,720 17 | |
| Plus CVE 828.114583 days at 1,500.00 USD per Average month | 40,836.75 | |
| | | |
| Less total raised Offhire | | 1,206,486.13 |
| Less total raised Offhire CVE | | 1,188.97 |
| Net Period Address Commission | 45,206 72 | 1,682,714 84 |
| | | |
| | | |
| **Bunkers** | | |
| Plus total BOD 2,083.000 MT IFO @ 375.00 USD/MT | 781,125.00 | |
| Plus total BOD 107.000 MT MDO @ 685.00 USD/MT | 73,295.00 | |
| Less total BOR 1,266.500 MT IFO @ 375.00 USD/MT | | 474,682.60 |
| Less total BOR 33.000 MT MDO @ 685.00 USD/MT | | 22,605.00 |
| Less total IFO bunkers offhire (all raised offhire incidents) | | 78,258 75 |
| Less total MDO bunkers offhire (all raised offhire incidents) | | 46,366.00 |

000564

Owner Disbursement Items
Less total Owner Disbursement items                                                4,033.68

Additional Items
Proforma        Plus Hold cleaning Reserve : IHC USD 5500 X 12 = USD 66,000    66,000.00
Proforma        Plus Liast of cleaning Reserve : ILHC                          6,000.00
Proforma        Plus Surveys : JOINT ON-HIRE SURVEY USD 800/2 = USD 400          400.00

                                          TOTAL DUE OWNER
Less Total Paid                                                               38,800,566.04

Net credits / debits                                         42,418,593.54    41,987,780.81
Balance due to Owners                                                            430,812.73

                                                             42,418,593.54    42,418,593.54

                                                                                E & O E

Schedule of payments

| Date | Refno. | Payment no. | |
|------|--------|-------------|---|
| 6Oct2006 | 1478 | 1/06102006 | 1,677,034.73 |
| 20Oct2006 | 3382 | 2/20102006 | 722,614.72 |
| 3Nov2006 | 3384 | 3/03112006 | 722,614.73 |
| 17Nov2006 | 3336 | 4/17112006 | 722,614.73 |
| 4Dec2006 | 3358 | 5/04122006 | 722,614.73 |
| 18Dec2006 | 3360 | 6/18122006 | 722,614.73 |
| | 3362 | 7 | 722,614.73 |
| 17Jan2007 | 3364 | 8/17012007 | 721,788.73 |
| 1Feb2007 | 3366 | 9/01022007 | 722,614.72 |
| 16Feb2007 | 3368 | 10/16022007 | 722,614.73 |
| 2Mar2007 | 3370 | 11/02032007 | 722,055.09 |
| 16Mar2007 | 3372 | 12/16032007 | 722,614.72 |
| 3Apr2007 | 3374 | 13/03042007 | 722,038.83 |
| 17Apr2007 | 3376 | 14/17042007 | 722,614.72 |
| 2May2007 | 3378 | 15/02052007 | 722,614.73 |
| 16May2007 | 3380 | 16/16052007 | 722,614.73 |
| 1Jun2007 | 3382 | 17/01062007 | 722,614.72 |
| 15Jun2007 | 3384 | 18/15062007 | 722,614.73 |
| 29Jun2007 | 3386 | 19/29062007 | 722,614.72 |
| 14Jul2007 | 3388 | 20/14072007 | 722,614.73 |
| 30Jul2007 | 3390 | 21/30072007 | 722,614.73 |
| 15Aug2007 | 3392 | 22/15082007 | 722,614.72 |
| 30Aug2007 | 3394 | 23/30082007 | 722,614.73 |
| 14Sep2007 | 3396 | 24/14092007 | 722,614.72 |
| 29Oct2007 | 3942 | 25/29102007 | 722,614.73 |
| 13Oct2007 | 4250 | 26/13102007 | 722,614.73 |

Page   2

| Date | No. | Ref | Amount |
|---|---|---|---|
| 27Oct2007 | 4806 | 27/27102007 | |
| 10Nov2007 | 5157 | 28/10112007 | 722,614.72 |
| 27Nov2007 | 5158 | 29/27112007 | 663,260.58 |
| 13Dec2007 | 5159 | 30/13122007 | 722,614.72 |
| 28Dec2007 | 5342 | 31/28122007 | 722,614.73 |
| 12Jan2008 | 5753 | 32/12012008 | 722,614.73 |
| 25Jan2008 | 6243 | 33/25012008 | 721,842.09 |
| 11Feb2008 | 6529 | 34/11022008 | 722,614.73 |
| 26Feb2008 | 6630 | 35/26022008 | 722,614.73 |
| 12Mar2008 | 6901 | 36/12032008 | 720,551.69 |
| 27Mar2008 | 7161 | 37/27032008 | 722,614.73 |
| 11Apr2008 | 8291 | 38/11042008 | 722,614.73 |
| 25Apr2008 | 8202 | 39/25042008 | 650,282.25 |
| 10May2008 | 8608 | 40/10052008 | 723,503.56 |
| 24May2008 | 8609 | 41/24052008 | 722,614.73 |
| 10Jun2008 | 8898 | 42/10062008 | 722,614.73 |
| 25Jun2008 | 9170 | 43/25062008 | 722,614.73 |
| 10Jul2008 | 9348 | 44/10072008 | 722,614.73 |
| 24Jul2008 | 9565 | 45/24072008 | 722,614.73 |
| 7Aug2008 | 9765 | 46/07082008 | 722,614.73 |
| 21Aug2008 | 10024 | 47/21082008 | 722,614.73 |
| 9Sep2008 | 10317 | 48/09092008 | 722,614.73 |
| 23Sep2008 | 10518 | 49/23092008 | 722,614.73 |
| 9Oct2008 | 10663 | 50/09102008 | 722,614.73 |
| 11Nov2008 | Proforma | | 722,614.73 |
| 26Nov2008 | Proforma | | 331,864.01 |
| 19Dec2008 | Proforma | | 698,861.23 |
| | Proforma | | 722,614.73 |
| | Proforma | | 0.00 |
| | Proforma | | 0.00 |
| | Proforma | | 0.00 |
| | Proforma | | 0.00 |

Total Paid

38,600,566.04

000566

Claim for losses arising out of termination of charter

| | |
|---|---|
| Owner: | Transfield ER Cape Limited |
| Charterer: | Armada (Singapore) Pte Limited |
| | |
| Vessel: | TER TBN |
| Charterparty date: | 26th March 2008 |
| Charter Period: | minimum 119 months |
| Daily hire rate: | $46,250.00 |
| Daily hire rate less commission: | $44,118.75 |
| | |
| Days remaining under charter: | 3,619.58 |
| (Calculated as 119 / 12 * 365) | |
| | |
| BCI Timecharter average at time of termination: | 9,408 |
| Applicable market rate less commission: | $9,053.28 |
| | |
| Difference between charter rate | |
| and market rate ("Claim Rate"): | $35,065.48 |
| | |
| Time remaining x Claim Rate: | $126,922,406.59 |
| | |
| **TOTAL CLAIM =** | **$126,922,406.59** |

090567



Claim for losses arising out of termination of COA

|  | |
|---|---|
| Owner: | Transfield ER Cape Limited |
| Charterer: | Armada (Singapore) Pte Limited |

| | |
|---|---|
| Contract of affreightment date: | 2nd October 2008 |
| Maximum cargo per shipment: | 176,000 |
| Number of shipments: | 4 |
| Total cargo to be lifted: | 704,000 |

| | |
|---|---|
| Route: | Tubarao / Qingdao |
| Freight rate per mt: | $37.00 |
| Freight rate per mt less commission: | $35.51 |

| | |
|---|---|
| Date of termination: | 12th January 2009 |

| | |
|---|---|
| BCI C3 route on date of termination: | $12.67 |
| Market rate less commission: | $12.38 |

| | |
|---|---|
| Difference between COA rate and market rate ("Claim Rate"): | $23.23 |

| | |
|---|---|
| Total cargo x Claim Rate: | $16,352,520.60 |

| | |
|---|---|
| **TOTAL CLAIM =** | **$16,352,520.60** |



Claim for losses arising out of termination of COA

| | |
|---|---|
| Owner: | Transfield ER Cape Limited |
| Charterer: | Armada (Singapore) Pte Limited |
| | |
| Contract of affreightment date: | 6th October 2008 |
| Maximum cargo per shipment: | 176,000 |
| Number of shipments: | 6 |
| Total cargo to be lifted: | 1,056,000 |
| | |
| Route: | Dampier / Qingdao |
| Nominal freight rate per mt: | $16.00 |
| Effective freight* rate per mt: | $16.51 |
| *calculated as $16 + ($90,000 * 6 / 1,056,000) | |
| Freight rate per mt less commission: | $15.69 |
| | |
| Date of termination: | 12th January 2009 |
| | |
| BCI C5 route on date of termination: | $8.14 |
| Market rate less commission: | $5.91 |
| | |
| Difference between COA rate | |
| and market rate ("Claim Rate"): | $9.99 |
| | |
| Total cargo x Claim Rate: | $10,546,519.60 |
| | |
| **TOTAL CLAIM =** | **$10,546,519.60** |



 **Transfield ER Cape Limited**
c/o- Transfield Resources Ltd. as Agent
Rm 2338 Sun Hung Kai Centre,
30 Harbour Rd, Wanchai, Hong Kong
Tel (852) 28770829 Fax (852) 25877822

## CAPE SATURN

### PROVISIONAL FINAL HIRE STATEMENT

| Charterer | : Armada (Singapore) Pte. Ltd. | Owner | : Transfield ER Cape Ltd. |
| Reference | : CP0834V3 | | |
| CP Date | : 11Sep2007 | | |
| Prim Date | : 12Dec2008 12:42 | Printed By | : RAYC |
| Brokers | : Arrow Asia HK | | |
| Voyage | : CP0834V3 | | |

| | DR | CR |
|---|---|---|
| Plus Hire 413.691667 days between 1Oct2007 16:12 and 19Nov2008 6:48 at 130,000.00 USD per day | 53,779,916.67 | |
| Plus CVE 413.691667 days at 1,625.00 USD per Average month | 22,101.34 | |
| | | |
| Net Period Address Commission | 0.00 | 2,016,746.58 |
| | | |
| | | |
| **Bunkers** | | |
| Plus total BOD 1,902.210 MT IFO @ 380.00 USD/MT | 722,639.80 | |
| Plus total BOD 82.570 MT MDO @ 660.00 USD/MT | 53,670.50 | |
| Less total BOR 1,793.160 MT IFO @ 380.00 USD/MT | | 681,400.80 |
| Less total BOR 80.000 MT MDO @ 660.00 USD/MT | | 52,000.00 |
| | | |
| | | |
| **Owner Disbursement Items** | | |
| Less total Owner Disbursement items | | 2,253.93 |

Page 1

000570

**Additional Items**

| | | | |
|---|---|---|---|
| 10578 | Plus Hold cleaning : Intermediate hold clean bonus for voy.1/2 Rotterdam/PDM | 4,500.00 | |
| 10578 | Plus Hold cleaning : Intermediate hold clean bonus for voy.2/3 Kwangyang/Saldanha Bay | 4,500.00 | |
| Proforma | Plus Hold cleaning : Intermediate hold clean bonus for voy.3/4 Constantza/Tubarao | 4,500.00 | |
| Proforma | Plus Hold cleaning : Intermediate hold clean bonus for voy.4/5 Kinatsu/Port Hedland | 4,500.00 | |
| Proforma | Plus Hold cleaning : Intermediate hold clean bonus for voy.5/6 Lucjing/Dampier | 4,500.00 | |
| Proforma | Plus Hold cleaning : Intermediate hold clean bonus for voy.6/7 Kwangyang/Haypoint | 4,500.00 | |
| Proforma | Plus Lieu of cleaning : ILOHC | 6,000.00 | |
| 5438 | Plus Surveys : 3 parties Joint Off/On hire fully B&C survey at Bayuquan (each Usd400.-) | 400.00 | |
| Proforma | Less Surveys : Joint offhire fully B & C survey at Kwangyang (Usd300/each party) | | 300.00 |

| | | | | |
|---|---|---|---|---|
| Less Total Paid | | | | 50,704,157.86 |
| | | | 54,611,928.31 | |
| Net credits / debits | | | | 53,456,589.47 |
| Balance due to Owners | | | | 1,155,038.84 |
| | | | 54,611,928.31 | 54,611,928.31 |
| | | | | E. & O. E |

| Date | Refno. | Payment no. | | |
|---|---|---|---|---|
| 10Oct2007 | 4581 | 1/10102007 | | 2,829,811.87 |
| 16Oct2007 | 4582 | 2/16102007 | | 1,853,301.37 |
| 31Oct2007 | 4583 | 3/31102007 | | 1,926,426.37 |
| 15Nov2007 | 4760 | 4/15112007 | | 1,877,676.37 |
| 29Nov2007 | 4922 | 5/29112007 | | 1,877,676.37 |
| 14Dec2007 | 5171 | 6/14122007 | | 1,877,676.37 |
| 29Dec2007 | 5438 | 7/29122007 | | 1,878,078.37 |
| 12Jan2008 | 5730 | 8/12012008 | | 1,877,676.37 |
| 29Jan2008 | 5817 | 9/29012008 | | 1,877,466.99 |
| 12Feb2008 | 6963 | 10/12022008 | | 1,877,676.38 |
| 28Feb2008 | 7200 | 11/28022008 | | 1,877,252.26 |
| 14Mar2008 | 7201 | 12/14032008 | | 1,877,676.38 |
| 28Mar2008 | 7202 | 13/28032008 | | 1,877,676.38 |
| 11Apr2008 | 5845 | 14/11042008 | | 1,855,676.39 |

000571

| Date | Ref | Invoice | | Balance |
|---|---|---|---|---|
| 12Apr2008 | 8648 | 14/12042008 | | 1,886,676.38 |
| 26Sep2008 | 8646 | 14/26092008 | 1,886,676.38 | |
| 26Apr2008 | 8646 | 15/26042008 | | 1,877,676.38 |
| 14May2008 | 8647 | 16/14052008 | | 1,877,676.38 |
| 27May2008 | 8942 | 17/27052008 | | 1,878,930.13 |
| 12Jun2008 | 8943 | 18/12062008 | | 1,877,676.38 |
| 27Jun2008 | 9222 | 19/27062008 | | 1,877,676.38 |
| 11Jul2008 | 9373 | 20/11072008 | | 1,877,676.38 |
| 25Jul2008 | 9597 | 21/25072008 | | 1,876,592.52 |
| 9Aug2008 | 9793 | 22/09082008 | | 1,877,676.38 |
| 26Aug2008 | 10047 | 23/26082008 | | 1,877,676.38 |
| 10Sep2008 | 10378 | 24/10092008 | | 1,877,676.38 |
| 12Apr2008 | 10578 | 25/12042008 | | 1,886,676.38 |
| 11Oct2008 | 10891 | 26/11102008 | | 1,886,676.38 |
| 25Oct2008 | 10891 | 27/25102008 | | 1,101,166.06 |
| | | Proforma | | 0.00 |
| Total Paid | | | | 50,704,187.86 |

| Ref | Description | Amount |
|---|---|---|
| 8817 | Less Suez Canal Parcel delivery to Master | 215.00 |
| 8817 | Less 2.5% comm on USD215.00 at Suez Canal | 5.38 |
| Proforma | Less Ponta De Madeira Courier R3347.45 @1.748 | 198.77 |
| Proforma | Less 2.5% comm on USD198.77 at PDM | 4.97 |
| 8942 | Less Kwangyang Stores/Cert of Pollution Prevention Kwon 668000 @913.40 | 728.06 |
| 8942 | Less 2.5% comm on USD728.06 at Kwangyang | 18.20 |
| 9597 | Less Saldanha Bay Crew Medical/Transportation/Courier | 201.41 |
| 9597 | Less Constantza Courier/Garbage Disinfection | 856.72 |
| 9597 | Less 2.5% comm on usd201.41 at Saldanha Bay | 5.04 |
| 9597 | Less 2.5% comm on usd856.72 at Constantza | 21.38 |
| Total Owner Disbursement Items | | 2,253.93 |

Page   3

000572



# Transfield ER Cape Limited

c/o Transfield Resources Ltd. as agent
Rm 2538 Sun Hung Kai Centre,
30 Harbour Rd, Wanchai, Hong Kong.
Tel (852) 2827 0889 Fax (852) 2587 9432



## INTREPID CLIPPER

### PROVISIONAL FINAL HIRE STATEMENT

| | |
|---|---|
| Charterer | : Transfield ER Cape Ltd. |
| Reference | : CP0701H |
| CP Date | : 9Jan2007 |
| Print Date | : 5May2009 11:38 |
| Brokers | : Arrow Asia HK |

| | |
|---|---|
| Registered Owner | : |
| Disponent Owner | : Armada (Singapore) Pte. Ltd. |
| | |
| Printed By | : RAYC |

| | DR | CR |
|---|---|---|
| Less Domestic Consumption 680.958333 days at 15.00 USD per day | 10,214.38 | |
| Plus Hire 680.958333 days between 4Apr2007 11:00 and 13Feb2009 10:00 at 46,800.00 USD per day | | 31,868,850.00 |
| Plus CVE 680.958333 days at 1,300.00 USD per Calendar month | | 29,026.23 |
| | | |
| Less total raised Offhire | 3,008,718.46 | |
| Plus total raised Offhire Domestic Consumption | | 954.35 |
| Less total raised Performance Claim | 348,289.46 | |
| Less total raised Performance Claim CVE | 317.23 | |
| Plus total raised Performance Claim Domes Consump | | 111.64 |
| Less total raised Offhire CVE | 2,742.34 | |
| Net Period Address Commission | 1,195,061.88 | 125,887.61 |
| Net Period Collect Commission | 398,380.63 | 41,962.53 |
| | | |
| **Bunkers** | | |
| Plus total BOO 1,304.515 MT IFO @ 345.00 USD/MT | | 450,057.68 |
| Plus total BOO 44.944 MT MDO @ 579.00 USD/MT | | 26,022.58 |
| Less total BOR 1,346.400 MT IFO @ 345.00 USD/MT | 464,508.00 | |
| Less total BOR 54.200 MT MDO @ 579.00 USD/MT | 31,381.80 | |
| Plus total IFO bunkers offhire (all raised offhire incidents) | | 14,408.87 |
| Plus total MDO bunkers offhire (all raised offhire incidents) | | 832.70 |
| Less total IFO bunkers performance claim (all raised incidents) | 21,904.46 | |
| Less total MDO bunkers performance claim (all raised incidents) | 20,300.54 | |

000573

Owner Disbursement Items

Less total Owner Disbursement Items                                3,884.84

Additional Items

| | | |
|---|---|---|
| 11998 | Plus Hold cleaning : Intermediate hold cleaning bonus for voy.1/2 Map Ta Phut/Dampier voy-1 | 5,400.00 |
| 11998 | Plus Hold cleaning : Intermediate hold cleaning bonus for voy.2/3 Shanghai/Newcastle voy-1 | 5,400.00 |
| 11998 | Plus Hold cleaning : Intermediate hol/intermediate hold cleaning bonus for voy.3/4 Map Ta Phut/Dampier voy-1 | 5,400.00 |
| 11998 | Plus Hold cleaning : Intermediate hold cleaning bonus for voy.4/5 Bellun/Dampier voy-1 | 5,400.00 |
| 12002 | Plus Hold cleaning : Intermediate hold cleaning bonus for voy.5/6 Datan/ Newcastle voy-1 | 5,400.00 |
| 12008 | Plus Hold cleaning : Intermediate hold clean bous for voy.6/7 Kaohsiung/Tanjung Bara voy-2 | 5,400.00 |
| 12010 | Plus Hold cleaning : Intermediate hold clean bonus for voy.7/8 Map Ta Phut/Dampier voy-3 | 5,400.00 |
| 12012 | Plus Hold cleaning : Intermediate hold clean bonus for voy. 8/9 Qingdao/Dampier voy-3 | 5,400.00 |
| 12020 | Plus Hold cleaning : Intermediate hold clean bonus for voy. 9/10 Bellun/Dampier voy-4 | 5,400.00 |
| 12024 | Plus Hold cleaning : Intermediate hold clean bonus for Voy. 10/11 Xingang /Richard Bay voy-5 | 5,400.00 |
| Proforma | Plus Hold cleaning : Intermediate hold clean bonus for voy. 11/12 Hunterston/Tubarao voy-6 | 5,400.00 |
| Proforma | Plus Hold cleaning : Intermediate hold clean bonus for voy. 12/13 Luojing/Richards Bay voy-6 | 5,400.00 |
| Proforma | Plus Hold cleaning : Intermediate hold clean bonus for voy.13/14 Lazaro Cardenas/Roberts Bank voy-7 | 5,400.00 |
| Proforma | Plus Lieu of cleaning : ILOHC voy-7 | 7,000.00 |
| 11994 | Plus Extra insurance : AP FOR VSL PASSING SUBITU, SULU ARCHIPELAGO ON 28-29/JUNE/07 voy-1 | 5,725.00 |
| Proforma | Plus Surveys : Joint on/hire fully B & C survey at Nagoya Yen 228,750.- (Usd1,911.24) X 1/2 voy-1 | 955.62 |
| Proforma | Less Surveys : Joint off/hire fully B & C survey at Map Ta Phut Usd800 X 1/3 voy-7 | 200.00 |

090574

| | | | | |
|---|---|---|---|---|
| Less Total Paid | | | 25,816,861.53 | |
| Net credits / debits | | | 31,322,760.29 | 32,641,802.81 |
| Balance due to Owners | | | 1,319,042.52 | |
| | | | 32,641,802.81 | 32,641,802.81 |

E. & O. E

| Date | Refno. | Payment no. | |
|---|---|---|---|
| 10Apr2007 | 11968 | 1/10042007 | 1,144,078.70 |
| 18Apr2007 | 11970 | 2/18042007 | 667,550.00 |
| 3May2007 | 11972 | 3/03052007 | 886,404.59 |
| 18May2007 | 11974 | 4/18052007 | 667,304.03 |
| 1Jun2007 | 11976 | 5/01062007 | 667,325.00 |
| 15Jun2007 | 11978 | 6/15062007 | 667,325.00 |
| 29Jun2007 | 11980 | 7/29062007 | 667,304.03 |
| 17Jul2007 | 11982 | 8/17072007 | 667,304.03 |
| 2Aug2007 | 11984 | 9/02082007 | 667,304.03 |
| 16Aug2007 | 11986 | 10/16082007 | 667,304.03 |
| 31Aug2007 | 11988 | 11/31082007 | 667,325.00 |
| 14Sep2007 | 11990 | 12/14092007 | 666,580.05 |
| 28Sep2007 | 11992 | 13/28092007 | 667,304.03 |
| 15Oct2007 | 11994 | 14/15102007 | 673,029.03 |
| 30Oct2007 | 11996 | 15/30102007 | 668,797.72 |
| 14Nov2007 | 11998 | 16/14112007 | 667,325.00 |
| 29Nov2007 | 12000 | 17/29112007 | 667,325.00 |
| 14Dec2007 | 12002 | 18/14122007 | 672,704.03 |
| 31Dec2007 | 12004 | 19/31122007 | 667,304.03 |
| 11Jan2008 | 12006 | 20/11012008 | 667,304.03 |
| 28Jan2008 | 12008 | 21/28012008 | 670,749.74 |
| 12Feb2008 | 12010 | 22/12022008 | 672,747.41 |
| 27Feb2008 | 12012 | 23/27022008 | 672,747.41 |
| 13Mar2008 | 12014 | 24/13032008 | 662,421.62 |
| 28Mar2008 | 12016 | 25/28032008 | 667,304.03 |
| 11Apr2008 | 12018 | 26/11042008 | 656,961.98 |
| 25Apr2008 | 12020 | 27/25042008 | 637,256.19 |
| 9May2008 | 12022 | 28/09052008 | 667,304.03 |
| 27May2008 | 12024 | 29/27052008 | 672,704.03 |
| 11Jun2008 | 12026 | 30/11062008 | 666,286.96 |

Page 3

000575

| Date | | | DR | CR |
|---|---|---|---|---|
| 28Jun2008 | 12028 | 31/28062008 | 687,325.00 | |
| 11Jul2008 | 12030 | 32/11072008 | 687,304.03 | |
| 25Jul2008 | 12032 | 33/25072008 | 687,304.03 | |
| 8Aug2008 | 12034 | 34/08082008 | 687,304.03 | |
| 25Aug2008 | 12036 | 35/25082008 | 687,304.03 | |
| 5Nov2008 | 12038 | 36/05112008 | 103,497.02 | |
| 7Nov2008 | 12040 | 37/07112008 | 687,325.00 | |
| 24Nov2008 | 12042 | 38/24112008 | 551,518.70 | |
| | 12044 | 39 | 0.00 | |
| 19Dec2008 | 12046 | 40/19122008 | 687,304.03 | |
| | Proforma | | 0.00 | |
| | Proforma | | 0.00 | |
| | Proforma | | 0.00 | |
| | Proforma | | 0.00 | |
| **Total Paid** | | | **28,816,861.63** | |

| | | DR | CR |
|---|---|---|---|
| Voyage 1: 0.287500 days – Underperformance claim for laden voy. Dampier/Luhussan (23/June-4/July/07) | | | |
| 12014 | Offhire at 100% Underperformance claim for laden voy. Dampier/Luhussan (23/June-4/July/07) : 46,800.00 USD Daily | 13,455.00 | |
| | Plus Address Commission of 3.750% | | 504.56 |
| | Plus Collect Commission of 1.250% | | 168.19 |
| 12014 | Less Offhire CVE at 100% Underperformance claim for laden voy. Dampier/Luhussan (23/June-4/July/07) : 1,300.00 USD per Calendar month | 12.46 | |
| 12014 | Plus Offhire Dem. Cons. at 100% Underperformance claim for laden voy. Dampier/Luhussan (23/June-4/July/07) : 15.00 USD Daily | | 4.31 |
| 12014 | Plus Offhire Bunkers Underperformance claim for laden voy. Dampier/Luhussan (23/June-4/July/07) : 45.326 MT IFO @ - 346.00 USD/MT | | 15,637.47 |
| | **Due to Owners** | | **2,647.07** |

| | | DR | CR |
|---|---|---|---|
| Voyage 1: 0.208333 days – Underperformance claim for laden voy. Dampier/Bellun (16-27/Sept/07) | | | |
| 12014 | Offhire at 100% Underperformance claim for laden voy. Dampier/Bellun (16-27/Sept/07) : 46,800.00 USD Daily | 9,749.98 | |
| | Plus Address Commission of 3.750% | | 365.62 |
| | Plus Collect Commission of 1.250% | | 121.87 |
| 12014 | Less Offhire CVE at 100% Underperformance claim for laden voy. Dampier/Bellun (16-27/Sept/07) : 1,300.00 USD per Calendar month | 9.03 | |

000576

| 12014 | Plus Offhire Dom. Cons. at 100% Underperformance claim for 'aden voy. Dampler/Beilun (16-27/Sept/07) : 16.00 USD Daily | | 3.13 |
|---|---|---|---|
| 12014 | Plus Offhire Bunkers Underperformance claim for laden voy. Dampler/Beilun (16-27/Sept/07) : 18.230 MT IFO @ -345.00 USD/MT | | 6,289.35 |
| | **Due to Charterers** | **2,979.04** | |

**Voyage 1: 0.579167 days - Underperformance claim for laden voy. Dampler/Dalian (15-28/Oct/07)**

| 12014 | Offhire at 100% Underperformance claim for laden voy. Dampler/Dalian (15-28/Oct/07) : 46,800.00 USD Daily | 27,108.01 | |
|---|---|---|---|
| | Plus Address Commission of 3.750% | | 1,016.44 |
| | Plus Collect Commission of 1.250% | | 338.81 |
| 12014 | Less Offhire CVE at 100% Underperformance claim for laden voy. Dampler/Dalian (15-28/Oct/07) : 1,300.00 USD per Calendar month | 24.29 | |
| 12014 | Plus Offhire Dom. Cons. at 100% Underperformance claim for laden voy. Dampler/Dalian (15-28/Oct/07) : 16.00 USD Daily | | 8.69 |
| 12014 | Plus Offhire Bunkers Underperformance claim for laden voy. Dampler/Dalian (15-28/Oct/07) : 31.927 MT IFO @ -345.00 USD/MT | | 11,014.82 |
| | **Due to Charterers** | **14,750.54** | |

**Voyage 3: 0.430556 days (18Jan2008 8:40 to 18Jan2008 19:00 - Offhire for vsl stoppage 10.3333hrs due to M/E turbo charger problem on 18/Jan/08)**

| 12042 | Offhire at 100% Offhire for vsl stoppage 10.3333hrs due to M/E turbo charger problem on 18/Jan/08 : 46,800.00 USD Daily | 20,150.00 | |
|---|---|---|---|
| | Plus Address Commission of 3.750% | | 755.63 |
| | Plus Collect Commission of 1.250% | | 251.88 |
| 12042 | Less Offhire CVE at 100% Offhire for vsl stoppage 10.3333hrs due to M/E turbo charger problem on 18/Jan/08 : 1,300.00 USD per Calender month | 18.06 | |
| 12042 | Plus Offhire Dom. Cons. at 100% Offhire for vsl stoppage 10.3333hrs due to M/E turbo charger problem on 18/Jan/08 : 16.00 USD Daily | | 6.46 |
| | **Due to Charterers** | **19,154.09** | |

**Voyage 3: 0.079861 days (17Jan2008 4:00 to 17Jan2008 5:55 - Performance claim of time lost 1.92hrs with bunker consumed fo/2.063mt & mdo/0.10mt (16-18/Jan/2008) for laden voy.Dampler/Qingdao (before stoppage for emergency engine repairs))**

| 12042 | Offhire at 100% Performance claim of time lost 1.92hrs with bunker consumed fo/2.063mt & mdo/0.10mt (16-18/Jan/2008) for laden voy.Dampler/Qingdao (before stoppage for emergency engine repairs) : 46,800.00 USD Daily | 3,737.50 | |
|---|---|---|---|
| | Plus Address Commission of 3.750% | | 140.16 |
| | Plus Collect Commission of 1.250% | | 46.72 |

000577

| 12042 | Less Offhire CVE at 100% Performance claim of time lost 1.92hrs with bunker consumed fo/2.063mt & mdo/0.10mt (16-18/Jan/2008) for laden voy.Dampier/Qingdao (before stoppage for emergency engine repairs) : 1,300.00 USD per Calendar month | 3.35 | |
|---|---|---|---|
| 12042 | Plus Offhire Dom. Cons. at 100% Performance claim of time lost 1.92hrs with bunker consumed fo/2.063mt & mdo/0.10mt (16-18/Jan/2008) for laden voy.Dampier/Qingdao (before stoppage for emergency engine repairs) : 15.00 USD Daily | | 1.20 |
| 12042 | Less Offhire Bunkers Performance claim of time lost 1.92hrs with bunker consumed fo/2.063mt & mdo/0.10mt (16-18/Jan/2008) for laden voy.Dampier/Qingdao (before stoppage for emergency engine repairs) : 2.063 MT IFO @ 495.00 USD/MT | 1,021.19 | |
| 12042 | Less Offhire Bunkers Performance claim of time lost 1.92hrs with bunker consumed fo/2.063mt & mdo/0.10mt (16-18/Jan/2008) for laden voy.Dampier/Qingdao (before stoppage for emergency engine repairs) : 0.100 MT MDO @ 1,200.00 USD/MT | 120.00 | |
| | **Due to Charterers** | 4,593.96 | |

Voyage 3: 3.750000 days - Performance claim of time lost 90hrs with bunker saved fo/151.248mt (16/Jan-1/Feb/2008) for laden voy.Dampier/Qingdao (after stoppage for emergency engine repairs)

| 12042 | Offhire at 100% Performance claim of time lost 90hrs with bunker saved fo/151.248mt (16/Jan-1/Feb/2008) for laden voy.Dampier/Qingdao (after stoppage for emergency engine repairs) : 46,800.00 USD Daily | 175,500.00 | |
|---|---|---|---|
| | Plus Address Commision of 3.750% | | 6,581.25 |
| | Plus Collect Commission of 1.250% | | 2,193.75 |
| 12042 | Less Offhire CVE at 100% Performance claim of time lost 90hrs with bunker saved fo/151.248mt (16/Jan-1/Feb/2008) for laden voy.Dampier/Qingdao (after stoppage for emergency engine repairs) : 1,300.00 USD per Calendar month | 157.28 | |
| 12042 | Plus Offhire Dom. Cons. at 100% Performance claim of time lost 90hrs with bunker saved fo/151.248mt (16/Jan-1/Feb/2008) for laden voy.Dampier/Qingdao (after stoppage for emergency engine repairs) : 15.00 USD Daily | | 56.25 |
| 12042 | Plus Offhire Bunkers Performance claim of time lost 90hrs with bunker saved fo/151.248mt (16/Jan-1/Feb/2008) for laden voy.Dampier/Qingdao (after stoppage for emergency engine repairs) : 151.248 MT IFO @ 495.00 USD/MT | | 74,867.76 |
| | **Due to Charterers** | 91,958.25 | |

Voyage 4: 0.208333 days - 50/50 for Underformance claim of time lost 10hrs & ifo/6.344mt over consumed on laden voy.Dampier/Beilun

| 12015 | Offhire at 100% 50/50 for Underformance claim of time lost 10hrs & ifo/6.344mt over consumed on laden voy.Dampier/Beilun : 46,800.00 USD Daily | 9,749.98 | |
|---|---|---|---|
| | Plus Address Commision of 3.750% | | 365.62 |
| | Plus Collect Commission of 1.250% | | 121.87 |

000578

| 12018 | Less Offhire CVE at 100% 50/50 for Underformance claim of time lost 10hrs & Ifo/8.344mt over consumed on laden voy.Dampier/Beilun : 1,300.00 USD per Calendar month | 9.34 | |
| 12018 | Plus Offhire Dom. Cons. at 100% 50/50 for Underformance claim of time lost 10hrs & Ifo/8.344mt over consumed on laden voy.Dampier/Beilun : 15.00 USD Daily | | 3.13 |
| 12018 | Less Offhire Bunkers 50/50 for Underformance claim of time lost 10hrs & Ifo/8.344mt over consumed on laden voy.Dampier/Beilun : 3.172 MT IFO @ 345.00 USD/MT | 1,094.34 | |
| | **Due to Charterers** | **10,363.04** | |

Voyage 6: 0.781250 days (17Apr2008 6:45 to 18Apr2008 00:30 - Offhire claim for vsl collision with mv 'Clara' at Xingang anchorage on 17/Apr/08)

| 12020 | Offhire at 100% Offhire claim for vsl collision with mv 'Clara' at Xingang anchorage on 17/Apr/08 : 46,800.00 USD Daily | 36,562.50 | |
| | Plus Address Commission of 3.750% | | 1,371.09 |
| | Plus Collect Commission of 1.250% | | 457.03 |
| 12020 | Less Offhire CVE at 100% Offhire claim for vsl collision with mv 'Clara' at Xingang anchorage on 17/Apr/08 : 1,300.00 USD per Calendar month | 33.85 | |
| 12020 | Plus Offhire Dom. Cons. at 100% Offhire claim for vsl collision with mv 'Clara' at Xingang anchorage on 17/Apr/08 : 15.00 USD Daily | | 11.72 |
| 12020 | Less Offhire Bunkers Offhire claim for vsl collision with mv 'Clara' at Xingang anchorage on 17/Apr/08 : 1.700 MT IFO @ 345.00 USD/MT | 586.50 | |
| 12020 | Less Offhire Bunkers Offhire claim for vsl collision with mv 'Clara' at Xingang anchorage on 17/Apr/08 : 0.200 MT MDO @ 579.00 USD/MT | 115.80 | |
| | **Due to Charterers** | **35,468.81** | |

Voyage 7: 2.000000 days (21Aug2008 18:00 to 23Aug2008 18:00 - Offhire for vsl deviated fm Shanhaiguan/Qinhuangdao return back to same position on diosp Shanghai (21-23/Oct/08))

| 12044 | Offhire at 100% Offhire for vsl deviated fm Shanhaiguan/Qinhuangdao return back to same position on diosp Shanghai (21-23/Oct/08) : 46,800.00 USD Daily | 93,600.00 | |
| | Plus Address Commission of 3.750% | | 3,510.00 |
| | Plus Collect Commission of 1.250% | | 1,170.00 |
| 12044 | Less Offhire CVE at 100% Offhire for vsl deviated fm Shanhaiguan/Qinhuangdao return back to same position on diosp Shanghai (21-23/Oct/08) : 1,300.00 USD per Calendar month | 83.87 | |
| 12044 | Plus Offhire Dom. Cons. at 100% Offhire for vsl deviated fm Shanhaiguan/Qinhuangdao return back to same position on diosp Shanghai (21-23/Oct/08) : 15.00 USD Daily | | 30.00 |
| 12044 | Plus Offhire Bunkers Offhire for vsl deviated fm Shanhaiguan/Qinhuangdao return back to same position on diosp Shanghai (21-23/Oct/08) : 1.700 MT MDO @ -579.00 USD/MT | | 984.30 |

090579

| | | | |
|---|---|---|---|
| 12044 | Less Offhire Bunkers Offhire for vsl deviated fm Shanhaiguan/Qinhuangdao return back to same position on diosp Shanghai (21-23/Oct/08) : 87.100 MT IFO @ 345.00 USD/MT | 30,049.50 | |
| | **Due to Charterers** | 115,039.97 | |

Voyage 5: 54.195833 days (28Aug2008 10:19 to 21Oct2008 15:00 - Offhire for vsl deviated fm Luojing/Shanghai on 28/Aug to Shanhaiguan/Qinhuangdao for drydock (30/Aug-21/Oct/08))

| | | | |
|---|---|---|---|
| 12044 | Offhire at 100% Offhire for vsl deviated fm Luojing/Shanghai on 28/Aug to Shanhaiguan/Qinhuangdao for drydock (30/Aug-21/Oct/08) : 46,800.00 USD Daily | 2,536,385.00 | |
| | Plus Address Commission of 3.750% | | 95,113.69 |
| | Plus Collect Commission of 1.250% | | 31,704.56 |
| 12044 | Less Offhire CVE at 100% Offhire for vsl deviated fm Luojing/Shanghai on 28/Aug to Shanhaiguan/Qinhuangdao for drydock (30/Aug-21/Oct/08) : 1,300.00 USD per Calendar month | 2,314.66 | |
| 12044 | Plus Offhire Dom. Cons. at 100% Offhire for vsl deviated fm Luojing/Shanghai on 28/Aug to Shanhaiguan/Qinhuangdao for drydock (30/Aug-21/Oct/08) : 15.00 USD Daily | | 812.94 |
| 12044 | Less Offhire Bunkers Offhire for vsl deviated fm Luojing/Shanghai on 28/Aug to Shanhaiguan/Qinhuangdao for drydock (30/Aug-21/Oct/08) : 106.300 MT IFO @ 345.00 USD/MT | 36,673.50 | |
| | **Due to Charterers** | 2,447,721.97 | |

Voyage 6: 0.619167 days - Underperformance claim for time lost 14.86hrs on laden voy.Dampier/Xingang (28/Mar-10/Apr/08)

| | | | |
|---|---|---|---|
| Proforma | Offhire at 50% Underperformance claim for time lost 14.86hrs on laden voy.Dampier/Xingang (28/Mar-10/Apr/08) : 46,800.00 USD Daily | 14,488.51 | |
| | Plus Address Commission of 3.750% | | 543.32 |
| | Plus Collect Commission of 1.250% | | 181.11 |
| Proforma | Less Offhire CVE at 50% Underperformance claim for time lost 14.86hrs on laden voy.Dampier/Xingang (28/Mar-10/Apr/08) : 1,300.00 USD per Calendar month | 12.98 | |
| Proforma | Plus Offhire Dom. Cons. at 50% Underperformance claim for time lost 14.86hrs on laden voy.Dampier/Xingang (28/Mar-10/Apr/08) : 15.00 USD Daily | | 4.64 |
| | **Due to Charterers** | 13,772.42 | |

Voyage 7: 1.456333 days (25Nov2008 3:47 to 26Nov2008 14:47 - Offhire due to vsl deviated to Cape Town for stowaways disembarkation)

| | | | |
|---|---|---|---|
| Proforma | Offhire at 100% Offhire due to vsl deviated to Cape Town for stowaways disembarkation : 46,800.00 USD Daily | 68,250.00 | |
| | Plus Address Commission of 3.750% | | 2,559.38 |
| | Plus Collect Commission of 1.250% | | 853.13 |

000580

| | | | | |
|---|---|---|---|---|
| Proforma | Less Offhire CVE at 100% Offhire due to vel deviated to Cape Town for stoweways disembarkation : 1,300.00 USD per Calendar month | | 63.19 | |
| Proforma | Plus Offhire Dom. Cons. at 100% Offhire due to vel deviated to Cape Town for stoweways disembarkation : 15.00 USD Daily | | | 21.88 |
| Proforma | Less Offhire Bunkers Offhire due to vel deviated to Cape Town for stoweways disembarkation : 69.500 MT IFO @ 345.00 USD/MT | | 23,977.50 | |
| Proforma | Less Offhire Bunkers Offhire due to vel deviated to Cape Town for stoweways disembarkation : 0.200 MT MDO @ 579.00 USD/MT | | 115.80 | |
| | | **Due to Charterers** | **86,972.10** | |

| | | | |
|---|---|---|---|
| 11990 | Less Newcastle (NS) Ship spars/Crew+ship mall Total AUD646.28 @1.233 voy-1 | 523.99 | |
| 11990 | Less Commission : Newcastle (NS) Ship spars/Crew+ship mall Total AUD646.28 @1.233 voy-1 | 13.10 | |
| 11990 | Less Map Ta Phut Crew Medictal/Transportation voy-1 | 222.30 | |
| 11990 | Less Commission : Map Ta Phut Crew Medictal/Transportation voy-1 | 5.56 | |
| 11998 | Less Port Dampier Fresh Water+Postage - AUD149.00 @1.19987 voy-1 | 124.18 | |
| 11998 | Less Commission : Port Dampier Fresh Water+Postage - AUD149.00 @1.19987 voy-1 | 3.10 | |
| 12008 | Less Port Dampier Staff overtime+Transportation AUD625.66 voy-1 | 556.62 | |
| 12008 | Less Commission : Port Dampier Staff overtime+Transportation AUD625.66 voy-1 | 13.92 | |
| 12008 | Less DaLian Quarantine Inspection voy-1 | 1,350.00 | |
| 12008 | Less Commission : DaLian Quarantine Inspection voy-1 | 33.75 | |
| 12026 | Less Port Dampier Total AUD1089.36 @1.075688752 voy-5 | 1,012.70 | |
| 12026 | Less Commission : Port Dampier Total AUD1089.36 @1.075688752 voy-5 | 25.32 | |
| | **Total Owner Disbursement Items** | **3,884.54** | |

090591

| | | DR | CR |
|---|---|---|---|

Voyage 6: 1.908333 days – Underformance claim for time lost 46.8hrs with over consumed fo/48.72mt & do/4.96mt on laden voy. Richards Bay/Hunterston (13/May-8/June/2008)

| Proforma | Less Performance Claim at 100% Underformance claim for time lost 46.8hrs with over consumed fo/48.72mt & do/4.96mt on laden voy. Richards Bay/Hunterston (13/May-8/June/2008) : 46,800.00 USD Daily | 89,309.25 | |
| | Plus Address Commission of 3.750% | | 3,349.12 |
| | Plus Collect Commission of 1.250% | | 1,116.37 |
| Proforma | Less Performance Claim CVE at 100% Underformance claim for time lost 46.8hrs with over consumed fo/48.72mt & do/4.96mt on laden voy. Richards Bay/Hunterston (13/May/2008) : 1,300.00 USD per Calendar month | 80.03 | |
| Proforma | Plus Performance Claim Dom. Cons. at 100% Underformance claim for time lost 46.8hrs with over consumed fo/48.72mt & do/4.96mt on laden voy. Richards Bay/Hunterston (13/May-8/June/2008) : 15.00 USD Daily | | 28.63 |
| Proforma | Less Performance Claim Bunkers Underformance claim for time lost 46.8hrs with over consumed fo/48.72mt & do/4.96mt on laden voy. Richards Bay/Hunterston (13/May-8/June/2008) : 4.960 MT MDO @ 579.00 USD/MT | 2,871.84 | |
| Proforma | Less Performance Claim Bunkers Underformance claim for time lost 46.8hrs with over consumed fo/48.72mt & do/4.96mt on laden voy. Richards Bay/Hunterston (13/May-8/June/2008) : 48.720 MT IFO @ 345.00 USD/MT | 16,808.40 | |
| | Due to Charterers | 104,575.13 | |

Voyage 8: 4.000000 days – Underformance claim for time lost 96hrs with over consumed fo/86.73mt & do/7.04 on laden voy.Tubarao/Mejiahan (9/July-19/Aug/08)

| Proforma | Less Performance Claim at 100% Underformance claim for time lost 96hrs with over consumed fo/86.73mt & do/7.04 on laden voy.Tubarao/Mejiahan (9/July-19/Aug/08) : 46,800.00 USD Daily | 187,200.00 | |
| | Plus Address Commission of 3.750% | | 7,020.00 |
| | Plus Collect Commission of 1.250% | | 2,340.00 |
| Proforma | Less Performance Claim CVE at 100% Underformance claim for time lost 96hrs with over consumed fo/86.73mt & do/7.04 on laden voy.Tubarao/Mejiahan (9/July-19/Aug/08) : 1,300.00 USD per Calendar month | 172.28 | |
| Proforma | Plus Performance Claim Dom. Cons. at 100% Underformance claim for time lost 96hrs with over consumed fo/86.73mt & do/7.04 on laden voy.Tubarao/Mejiahan (9/July-19/Aug/08) : 15.00 USD Daily | | 60.00 |
| Proforma | Less Performance Claim Bunkers Underformance claim for time lost 96hrs with over consumed fo/86.73mt & do/7.04 on laden voy.Tubarao/Mejiahan (9/July-19/Aug/08) : 86.730 MT IFO @ 345.00 USD/MT | 29,576.85 | |

000582

| Proforma | Less Performance Claim Bunkers Underformance claim for time lost 96hrs with over consumed fo/86.73ml & do/7.04 on laden voy.Tubarao/Maijshan (9/July-19/Aug/08) : 7.040 MT MDO @ 579.00 USD/MT | 4,078.16 | |
| --- | --- | --- | --- |
| | **Due to Charterers** | 211,606.29 | |

Voyage 7: 0.431250 days - Underformance claim for time lost 10.35hrs with mdo/14.17mt overconsumed & ifo/59.177mt saved on laden voy.Richards Bay/Lazaro Cardenas (28/Nov-28/DEC/08)

| Proforma | Less Performance Claim at 100% Underformance claim for time lost 10.35hrs with mdo/14.17mt overconsumed & ifo/59.177mt saved on laden voy.Richards Bay/Lazaro Cardenas (28/Nov-28/DEC/08) : 46,800.00 USD Daily | 20,182.50 | |
| --- | --- | --- | --- |
| | Plus Address Commision of 3.750% | | 756.84 |
| | Plus Collect Commision of 1.250% | | 252.28 |
| Proforma | Less Performance Claim CVE at 100% Underformance claim for time lost 10.35hrs with mdo/14.17mt overconsumed & ifo/59.177mt saved on laden voy.Richards Bay/Lazaro Cardenas (28/Nov-28/DEC/08) : 1,300.00 USD per Calender month | 18.69 | |
| Proforma | Plus Performance Claim Dom. Cons. at 100% Underformance claim for time lost 10.35hrs with mdo/14.17mt overconsumed & ifo/59.177mt saved on laden voy.Richards Bay/Lazaro Cardenas (28/Nov-28/DEC/08) : 15.00 USD Daily | | 6.47 |
| Proforma | Plus Performance Claim Bunkers Underformance claim for time lost 10.35hrs with mdo/14.17mt overconsumed & ifo/59.177mt saved on laden voy.Richards Bay/Lazaro Cardenas (28/DEC/08) : 59.177 MT IFO @ -301.50 USD/MT | | 17,841.87 |
| Proforma | Less Performance Claim Bunkers Underformance claim for time lost 10.35hrs with mdo/14.17mt overconsumed & ifo/59.177mt saved on laden voy.Richards Bay/Lazaro Cardenas (28/DEC/08) : 14.170 MT MDO @ 655.50 USD/MT | 9,288.44 | |
| | **Due to Charterers** | 10,532.17 | |

Voyage 7: 1.102500 days - Underformance claim of time lost 26.46hrs for laden voy. Roberts Bank/MapTaPhut (16/Jan-9/Feb/09)

| Proforma | Less Performance Claim at 100% Underformance claim of time lost 26.46hrs for laden voy. Roberts Bank/MapTaPhut (16/Jan-9/Feb/09) : 46,800.00 USD Daily | 51,597.00 | |
| --- | --- | --- | --- |
| | Plus Address Commision of 3.750% | | 1,934.89 |
| | Plus Collect Commision of 1.250% | | 644.96 |
| Proforma | Less Performance Claim CVE at 100% Underformance claim of time lost 26.46hrs for laden voy. Roberts Bank/MapTaPhut (16/Jan-9/Feb/09) : 1,300.00 USD per Calender month | - 46.23 | |
| Proforma | Plus Performance Claim Dom. Cons. at 100% Underformance claim of time lost 26.46hrs for laden voy. Roberts Bank/MapTaPhut (16/Jan-9/Feb/09) : 15.00 USD Daily | | 16.54 |
| Proforma | Plus Performance Claim Bunkers Underformance claim of time lost 26.46hrs for laden voy. Roberts Bank/MapTaPhut (16/Jan-9/Feb/09) : 23.881 MT IFO @ -378.00 USD/MT | | 8,639.92 |

-099593

Less Performance Claim Bunkers Underforrmance claim of time                    4,064.10
lost 26.46hrs for laden voy. Roberts Bsnk/MapTaPhut (16/Jan-
9/Feb/09) : 6.200 MT MDO @ 655.50 USD/MT

                                   Due to Charterers                    46,473.02

099594

# Exhibit 20

James H. Power, Esq.
Barbra R. Parlin, Esq.
Warren E. Gluck, Esq.
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: james.power@hklaw.com
      arbra.parlin@hklaw.com
      arren.gluck@hklaw.com

*Counsel for the Joint Liquidators of*
*Transfield ER Cape Limited (BVI)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| | : | |
| TRANSFIELD ER CAPE LIMITED (BVI), | : | Case No. 10-_____ (___) |
| | : | |
|       Debtor in a | : | |
|       Foreign Proceeding. | : | |
| | : | |
| | : | |

-------------------------------------------------------x

## LIST FILED PURSUANT TO BANKRUPTCY RULE 1007(a)(4)

     I, CASEY McDONALD, a duly appointed Joint Liquidator and foreign representative ("Petitioners" or "Joint Liquidators" or "Liquidators") of Transfield ER Cape Limited (BVI) ("TERC" or the "Foreign Debtor"), a company undergoing liquidation before the Commercial Division of the High Court of Justice (the "BVI Court"), case number BVIHCV2010/21 (the "BVI Liquidation"), pursuant to the Insolvency Act of 2003 of the British Virgin Islands (the "2003 Act"), hereby submits the following information as required by Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure, which provides:

     In addition to the documents required under § 1515 of the Code, a foreign representative filing a petition for recognition under chapter 15 shall file with the

petition; (A) a *corporate ownership statement* containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the name and address of all administrators in foreign proceedings of the debtor, all parties to any litigation in which the debtor is a party and that is pending in the United States at the time of the filing of the petition, and all entities against whom provisional relief is sought under § 1519 of the Code.

Fed. R. Bankr. P. 1007(a)(4).

<u>Statement under Fed. R. Bankr. P. 7007.1</u>

1.     TERC has two entity shareholders which own 10% of more of TERC's shares.

Transfield (Holdings) Ltd. and Global Maritime Ltd.  Neither is a public entity.

<u>Name and Address of All Joint Liquidators in Foreign Proceedings of the Company</u>

2.     The following individuals, with corresponding business addresses, have been duly

appointed as Joint Liquidators, both by the BVI Court and High Court of the Republic of

Singapore:

| Casey McDonald | c/o KPMG (BVI) Limited, 3rd Floor, Flemming House, Road Town, British Virgin Islands |
| --- | --- |
| Patrick Cowley | c/o KPMG, 27th Floor Alexandra House 16-20 Chater Road, Central Hong Kong |
| Bob Yap Cheng Ghee | c/o KPMG, 16 Raffles Quay #22-00 Hong Leong Building Singapore |

<b>All Parties to Litigation in Which the Company is a<br>Party that is Pending in the United States at the Time of the Filing of the Petition</b>

3.     The following is a list of the names and addresses of parties to litigation involving

TERC pending in the United States that are known to the Joint Liquidators as of the date hereof.

a.  *China Earth Shipping Inc. v. Transfield ER Cape Limited,* Index No. 650621-2010

(N.Y. Sup. Ct.).  The name and address of China Earth Shipping Inc. for purposes of

this action is c/o: Mahoney & Keane, LLP (Attn: Edward A. Keane, Esq.) 11 Hanover

Square, 10th Fl., New York, NY 10005.

b. *China Sun Shipping Inc. v. Transfield ER Cape Limited* Index No. 650622-2010 (N.Y. Sup. Ct.). The name and address of China Earth Shipping Inc. for purposes of this action is c/o: Mahoney & Keane, LLP (Attn: Edward A. Keane, Esq.) 11 Hanover Square, 10th Fl., New York, NY 10005.

c. *Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd. and Transfield ER Ltd.* 10-cv-4434 (S.D.N.Y.) (SHS). The name and address of Constellation Energy Commodities Group Inc. for purposes of this action is c/o: Blank Rome LLP (Attn: Jeremy Harwood) 405 Lexington Avenue, New York, NY, 10174.

d. *Jade Navigation S.A. v. Transfield ER Cape Ltd.,* 10-cv-4899 (S.D.N.Y.) (AKH). The name and address of Jade Navigation S.A. for purposes of this action is c/o: Freehill, Hogan & Mahar LLP (Attn: Peter Gutowski) 80 Pine Street, New York, N.Y. 10005.

e. *TMT Bulk Co. Ltd. v. Transfield ER Cape Ltd. and Transfield ER Ltd.*, 10-cv-5110 (S.D.N.Y.) (JSR). The name and address of TMT Bulk Co. Ltd.'s United States counsel for purposes of this action is c/o: Tisdale Law Offices, L.L.C., 24 West 40th Street, 17th Floor, New York, NY 10018.

**All Entities Against Whom Provisional Relief is Sought Under 11 U.S.C. § 1519**

4. Petitioners seek provisional relief against the litigants listed above as parties to litigation pending in the United States in which TERC is a party. Petitioners will seek provisional relief against any other parties that become, manifest an intent to become, or are discovered as parties to litigation in the United States in which TERC is a party.

9911782-1

5.    Petitioners will file an amended statement pursuant to Bankr. R. 1007(a)(4) upon the discovery of any additional parties against which provisional relief is sought

## LIST OF KNOWN CREDITORS

6.    Attached hereto as Schedule A is a list of the names, addresses and phone numbers of TERC's known creditors as of the date of this filing.

7.    Petitioners will file an updated list of creditors to the extent that any additional creditors become known to Petitioners after the date hereof.

I declare, under penalty of perjury under the laws of the United States of America, that the information set forth above is based on my current knowledge, information and belief after reasonable inquiry, and in contemplation of and subject to supplementation, true and correct. Executed on this __19th__ day of November, 2010

_____
CASEY McDONALD

9911782-1

| Transfield ER Cape Limited (In Liquidation) | |
|---|---|
| **Master Creditors' Schedule** | |

| No. | Name of Creditor | Address1 |
|---|---|---|
| 1 | MS "Vogerunner" Gmbh & Co. KG | Hallerstrasse 40<br>20146 Hamburg<br>Germany |
| 2 | Arrow Asia Ship Brokers Ltd. | Suite 2708, 27/F<br>Jardine House<br>1 Connaught Place Central<br>Hong Kong |
| 3 | Beijing Shougang Huaxia International Trade Company Ltd. | No. 60 Xizhimen<br>North Street Beijing<br>China |
| 4 | Benxi Iron & Steel Group International Economic and Trading Co. Ltd. | No.9, Dongming Lu<br>Pingshan Qu<br>Benxi, 117000<br>China |
| 5 | BHP Billiton Marketing AG | Joechlerweg 2,<br>PO Box 105<br>Baar Switzerland |
| 6 | Bocimar International NV | 20 De Gerlachekaai<br>2000 Antwerp<br>Belgium |
| 7 | MS "Cape Ray" Schiffahrts Gmbh & Co. KG | c/o Columbia Shipmanagement (Deutschland) GmbH<br>Grosse Elbstrasse 275<br>22767 Hamburg<br>Germany |
| 8 | Cetragpa SNC | 28 quai Gallieni<br>92158 Suresnes Cedex<br>France |
| 9 | Chang Myung Shipping Co. Ltd. | 4th Fl, Dong-Yang Building<br>51-6 Chungjongno, 1-ga,<br>Chung-gu, Seoul, South Korea<br><br>9th Fl, Gwanghwamun Offica<br>163 Sinmunno 1-ga,<br>Seoul Korea<br><br>Rm 915, 9Fl Gwanghwamun Officia 163<br>Sinmunno 1-Ga<br>Chongno-gu, Seoul,<br>South Korea |
| 10 | China Earth Shipping Inc. | c/o 2/F Bonham Centre,79 Bonham Stand East<br>Sheung Wan<br>Hong Kong |
| 11 | China National Chartering Company Ltd. | Room 818<br>Sinotrans Plaza A<br>A43 Xizhimen Beidajie<br>Beijing,China 100044 |
| 12 | China Saturn Shipping Inc. | c/o 2/F Bonham Centre, 79 Bonham Stand East<br>Sheung Wan<br>Hong Kong |
| 13 | China Shandong Iron & Steel Products Co. Ltd. | 21 Gongyebeilu Road<br>Jinan<br>Shandong, 31200<br>China |
| 14 | China Sun Shipping Inc. | c/o 2/F Bonham Centre, 79 Bonham Stand East<br>Sheung Wan<br>Hong Kong |

| No. | Name of Creditor | Address1 |
|-----|------------------|----------|
| 15 | CITIC Australia Commodity Trading Pty Ltd. | Citic House Level 7<br>99 King Street<br>Melbourne VIC 3000<br>Australia |
| 16 | Clarkson Asia limited | 1706-1716 Sun Hung Kai Centre<br>30 Harbour Road<br>Wanchai Hong Kong |
| 17 | Constellation Energy Commodities Group Inc. | 100 Constellation Way<br>Suite 500C<br>Baltimore<br>MD 21202 |
| 18 | Cosco Bulk Carrier Co. Ltd. | 909, No.1, Ocean Shipping Plaza<br>Hebei District<br>Tianjin 300010<br>China |
| 19 | Deiulemar Compagnia Di Navigazione S.P.A. A Socio Unico | Via Tironi 3<br>80059 Naples<br>Italy |
| 20 | Handan Iron & Steel Co. Ltd. | Road 232<br>Handan<br>Hebei, China |
| 21 | Ifchor Capes S.A. | Place Pépinet<br>1 - 1003 LAUSANNE<br>SWITZERLAND |
| 22 | ILDO Chartering Corporation | Room 903, Taehwa Building<br># 194-27, Insa-Dong<br>Chongno-Gu<br>Seoul, Korea<br><br>Rm.2230<br>Kwanghwamun<br>Officeia 163 |
| 23 | International Economic and Trading Corporation, Wugang Group | 945 Heping Street<br>Qingshan, Wuhan<br>Hubei province, China |
| 24 | Iron Miner Shipco LLC | Trust Company Building<br>Majuio Marshall Islands<br>Athens, Greece<br><br>c/o Marywille Maritime Inc.,<br>17th Km, National Road<br>Athons-hamiz Finikos Street<br>14564 Nea Kifissin |
| 25 | Jade Navigation S.A. | 80 Broad Street<br>Monrovia<br>Liveria |
| 26 | Kingdom Shipping Ltd. | 344 E Foothills Pkwy<br>Ste 1ea<br>Fort Collins, CO 80525-2601<br>United States |
| 27 | Lorentsen & Stemoco | Lorentzen & Stemoco AS<br>Lilleakerveien 4<br>0283 Oslo<br>Norway |
| 28 | Louis Dreyfus Commodities Suisse S.A. | 29, route de l'Aéroport<br>PO Box 236<br>CH-1215 Geneva 15<br>Switzerland |
| 29 | Mitsui O.S.K Lines, Ltd. | 1-1, Toranomon 2-Chome<br>Minato-ku, Tokyo<br>105-8688 Japan |

| No. | Name of Creditor | Address1 |
|-----|------------------|----------|
| 30 | Nanjing Iron & Steel Group International Trade Co. Ltd. | Rm.3301, Bldg. A<br>New Century Plaza, No.288<br>Zhongshan (E) Rd, Nanjing<br>Jiangsu, 210002, China |
| 31 | Nomura Trading Co. Ltd. | 1-1-1 Hirakawacho<br>Chiyoda-ku, 102-0093<br>Japan<br><br>Rm A-3<br>17 Kaba Aye Pagoda Rd<br>G Valley (2) Q R  Bahan<br>Yangon,  Myanmar (Burma) |
| 32 | North China Shipping Company Ltd. BHM | Offshore Group Chambers<br>P.O. Box CB-12751<br>Nassau, New Providence<br>Bahamas |
| 33 | Pacific Empire Shipping Limited | C/O Transmed Shipping Co Ltd<br>67, Thiseos Ave<br>N. Erythrea<br>146 71 Greece |
| 34 | Rizhao Steel Holding Group Co. Ltd. | No.600 Yanhai Road<br>Rizhao, Shandong<br>China<br><br>Room 2910-2912<br>No. 2299 (West ) Yan'An Road<br>Shanghai,  200336<br>China |
| 35 | Rizzo Bottiglieri De Carlini Armatori SPA | Viale Olivella 10<br>Torre Del Greco, 80059<br>Italy |
| 36 | Rockcheck Steel Group Co. Ltd. | Metallurgical Industry Area<br>Gegu Town Jiannan District<br>Tianjin, 300352<br>China |
| 37 | Rodskog Shipbrokers Ltd. | 16th Floor, Beautiful Group Tower<br>74-77 Connaught Road<br>Central, HG 0<br>Hong Kong |
| 38 | Samsun Logix Corporation | 5-6F, Lee Ma Blg<br>146-1 Soosong-Dong<br>Jongno-Gu, Seoul<br>Korea |
| 39 | San Steel Group Co. Ltd. | +86 592 516 0271 |
| 40 | Seawin Chartering Limited | P.O. BOX 957<br>OFFSHORE INCORPORATIONS CENTRE<br>ROAD TOWN, TORTOLA<br>BRITISH VIRGIN ISLANDS |
| 41 | Shagang New Building | Unit 2506-7, 25/F Harbour Centre<br>25 Harbour Road<br>Wan Chai<br>Hong Kong |
| 42 | Shagang Shipping Co. Ltd. | Unit 2506-7, 25/F Harbour Centre<br>25 Harbour Road<br>Wan Chai<br>Hong Kong |
| 43 | SK Shipping Europe Plc | 24 Cornhill, 5th Floor<br>London, England<br>EC3V 3ND<br>UK |

| No. | Name of Creditor | Address1 |
|-----|------------------|----------|
| 44 | SK Shipping Co Ltd. | SK Namsan Building<br>19th Floor 267 Namdaemunro 5-ga<br>Jung-gu, Seoul<br>Korea |
| 45 | STX Pan Ocean Co. Ltd. | STX Namsan Tower<br>631 Namdaemunno 5-ga<br>Jung-gu, Seoul, 100-803<br>Korea |
| 46 | Swissmarine Services S.A. | 13 Route de Florissant<br>1206 Geneua<br>Switzerland |
| 47 | tangshan Guofeng Iron & Steel Co. Ltd. | NO193 QINGNIAN ROAD<br>FENGNAN TANGSHAN HEBEI PR<br>CHINA |
| 48 | Tangshan Iron & Steel Group I&E Co. | zhangaidang@yahoo.com.cn |
| 49 | The Sanko Steamship Co. Ltd. | Hibya Kokusai Building<br>2-3, Uchisaiwaichi 2-chome<br>Chiyoda-ku, Tokyo<br>100-0011 Japan |
| 50 | TMT Bulk Corporation t/a TMT Bulk Co. Ltd. | Salduba Building, Top Floor<br>53rd East Street, Urbanizacion Obarrio<br>P.O. Box 7284<br>Panama 5, Panama |
| 51 | Tai Ping Insurance Co. Ltd. | 22/F Shenzhen CTS Building<br>No. 4011 Shennan, Boulevard<br>Shenzhen<br>China |
| 52 | STX Pan Ocean (U.K.) Co. Ltd. | 8th Floor, St Magnus House<br>3 Lower Thames Street<br>London, EC3R 6HE<br>UK |
| 53 | Delulemar Compagnia Di Navigazione S.P.A. A Socio Unico | Via Tironi 3<br>80059<br>Naples Italy |
| 54 | EDF Trading Limited | 80 Victoria Street<br>London SW1E<br>5JL UK |
| 55 | C Transport Cape Size BV, Amsterdam | capesops@ifchor.ch |
| 56 | Kawasaki Kisen Kaisha Ltd. | Hibiya Central Bldg.<br>2-9, Nishi-Shinbashi 1-Chome<br>Minato-Ku<br>Tokyo 1058421, Japan |
|  |  |  |

# Exhibit 21

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------X
CHINA EARTH SHIPPING INC.,                    **Index No. 650621/10**

                    Plaintiff,


         -against-


TRANSFIELD ER CAPE LIMITED,


                    Defendant.

-----------------------------------X



**MEMORANDUM OF LAW
IN OPPOSITION TO MOTION**




Edward A. Keane
Garth S. Wolfson

    Of Counsel



**MAHONEY & KEANE, LLP
Attorneys for Plaintiff
11 Hanover Square, Tenth Floor
New York, New York 10005
(212) 385-1422**

# TABLE OF CONTENTS

*Page*

ARGUMENT.....................................................1

POINT I.      TERC'S ACTIVITIES IN NEW YORK ARE MORE THAN
              SUFFICIENT TO JUSTIFY THE COURT'S EXERCISE
              OF PERSONAL JURISDICTION......................1

POINT II.     TERC HAS FAILED TO ESTABLISH ANY ENTITLEMENT
              TO DISMISSAL ON FORUM NON CONVENIENS GROUNDS..4

CONCLUSION...................................................7

TERC appears as a part, both plaintiff and defendant, in dozens of cases, both open and closed, since 2004. A true copy of PACER results in this regard is attached as Exhibit 1. This record conclusively establishes that, its Department of State authorization or deauthorization notwithstanding, TERC's activities easily meet New York's "doing business" standard.[4]

**POINT II.     TERC HAS FAILED TO ESTABLISH ANY ENTITLEMENT TO DISMISSAL ON FORUM NON CONVENIENS GROUNDS.**

To be sure, the burden of proving that the relevant public and private interest factors militate against accepting the litigation rests squarely upon the defendant, and the balance must weigh very strongly in the defendant's favor before plaintiff's choice of forum will be disturbed. See, generally, Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981).

TERC's discussion of the balance of conveniences in this case avoids the "elephant in the room," i.e. the reason TERC well knows for why plaintiff is seeking confirmation of the award in New York. Just last year the Court of Appeals issued its landmark decision in Koehler v. Bank of Bermuda Ltd., 12

---

[4] It is also worth noting that an entity by the name of "Transfield Shipping Inc." is currently registered to do business in New York, and is continuing TERC's tradition of filing lawsuits here. Id. Just by way of example, true copies of four of Transfield Shipping's verified complaints, without attachments, are annexed collectively as Exhibit 2. The Court will note that, in some instances, those pleadings were filed by the same attorneys who represent TERC in this action. And, in each, Transfield Shipping Inc. is alleged to share the very same 30 Harbour Road Hong Kong address as TERC. These facts, alone, also give rise to an issue of fact, at least warranting discovery, as to the jurisdictional presence of TERC in New York through its apparent corporate alter-ego.

N.Y.3d 533, 536 (2009), which held that, under CPLR 5225(a) and (b) a New York bank may be compelled to deliver to a judgment debtor property in which a judgment debtor has an interest, even when the bank was holding such property outside of New York. Id. Based on its jurisdiction over multiple garnishee banks in New York, this Court is able to not just recognize an award but enforce a judgment that would reach TERC assets. See also, TMR Energy Ltd. v. State Property Fund of Ukraine, 411 F.3d 296, 304 (D.C. Cir. 2005) ("Because there is no other forum in which TMR could reach SPF's property, if any, in the United States, we affirm the district court's refusal to dismiss this action based upon the doctrine of *forum non conveniens*."). TERC has not made the required showing that such relief can be afforded by courts in Hong Kong, because it plainly can not. TERC has thus not established the existence of an alternate forum that can provide the same remedies as this Court.

Moreover, "'New York has traditionally been a generous forum in which to enforce judgments for money damages rendered by foreign courts.'" Galliano v. Stallion, Inc., 15 N.Y.3d 75, 79-80 904 N.Y.S.2d 683, 930 N.E.2d 756 (2010) (quoting CIBC Mellon Trust Co. v. Mora Hotel Corp., 100 N.Y.2d 215, 221, 762 N.Y.S.2d 5, 792 N.E.2d 155 (2003). Article 53 is the clearest possible expression of New York's well-known and

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------X
CHINA SUN SHIPPING INC.,                        **Index No. 650622/10**

                    Plaintiff,


        -against-


TRANSFIELD ER CAPE LIMITED,


                    Defendant.

-------------------------------------X


**MEMORANDUM OF LAW
IN OPPOSITION TO MOTION**


Edward A. Keane
Garth S. Wolfson

        Of Counsel


**MAHONEY & KEANE, LLP
Attorneys for Plaintiff
11 Hanover Square, Tenth Floor
New York, New York 10005
(212) 385-1422**

## TABLE OF CONTENTS

*Page*

ARGUMENT....................................................1


POINT I.      TERC'S ACTIVITIES IN NEW YORK ARE MORE THAN
              SUFFICIENT TO JUSTIFY THE COURT'S EXERCISE
              OF PERSONAL JURISDICTION......................1


POINT II.     TERC HAS FAILED TO ESTABLISH ANY ENTITLEMENT
              TO DISMISSAL ON FORUM NON CONVENIENS GROUNDS..4


CONCLUSION..................................................7

TERC appears as a part, both plaintiff and defendant, in dozens of cases, both open and closed, since 2004. A true copy of PACER results in this regard is attached as Exhibit 1. This record conclusively establishes that, its Department of State authorization or deauthorization notwithstanding, TERC's activities easily meet New York's "doing business" standard.[4]

**POINT II.    TERC HAS FAILED TO ESTABLISH ANY ENTITLEMENT TO DISMISSAL ON FORUM NON CONVENIENS GROUNDS.**

To be sure, the burden of proving that the relevant public and private interest factors militate against accepting the litigation rests squarely upon the defendant, and the balance must weigh very strongly in the defendant's favor before plaintiff's choice of forum will be disturbed. See, generally, Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981).

TERC's discussion of the balance of conveniences in this case avoids the "elephant in the room," i.e. the reason TERC well knows for why plaintiff is seeking confirmation of the award in New York. Just last year the Court of Appeals issued its landmark decision in Koehler v. Bank of Bermuda Ltd., 12

---

[4] It is also worth noting that an entity by the name of "Transfield Shipping Inc." is currently registered to do business in New York, and is continuing TERC's tradition of filing lawsuits here. Id. Just by way of example, true copies of four of Transfield Shipping's verified complaints, without attachments, are annexed collectively as Exhibit 2. The Court will note that, in some instances, those pleadings were filed by the same attorneys who represent TERC in this action. And, in each, Transfield Shipping Inc. is alleged to share the very same 30 Harbour Road Hong Kong address as TERC. These facts, alone, also give rise to an issue of fact, at least warranting discovery, as to the jurisdictional presence of TERC in New York through its apparent corporate alter-ego.

N.Y.3d 533, 536 (2009), which held that, under CPLR 5225(a) and (b) a New York bank may be compelled to deliver to a judgment debtor property in which a judgment debtor has an interest, even when the bank was holding such property outside of New York. Id. Based on its jurisdiction over multiple garnishee banks in New York, this Court is able to not just recognize an award but enforce a judgment that would reach TERC assets. See also, TMR Energy Ltd. v. State Property Fund of Ukraine, 411 F.3d 296, 304 (D.C. Cir. 2005) ("Because there is no other forum in which TMR could reach SPF's property, if any, in the United States, we affirm the district court's refusal to dismiss this action based upon the doctrine of forum non conveniens."). TERC has not made the required showing that such relief can be afforded by courts in Hong Kong, because it plainly can not. TERC has thus not established the existence of an alternate forum that can provide the same remedies as this Court.

Moreover, "'New York has traditionally been a generous forum in which to enforce judgments for money damages rendered by foreign courts.'" Galliano v. Stallion, Inc., 15 N.Y.3d 75, 79-80 904 N.Y.S.2d 683, 930 N.E.2d 756 (2010) (quoting CIBC Mellon Trust Co. v. Mora Hotel Corp., 100 N.Y.2d 215, 221, 762 N.Y.S.2d 5, 792 N.E.2d 155 (2003). Article 53 is the clearest possible expression of New York's well-known and



**Exhibit 22**

## TRANSFIELD ER CAPE LIMITED (BVI) (in Liquidation)

### Resolution of Joint Liquidators Regarding Filing of Proceeding Under Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

WHEREAS Transfield ER Cape Limited (BVI) ("TERC") is a company incorporated under the laws of the British Virgin Islands, with a registered office at TrustNet (BVI) Ltd., TrustNet Chambers, P.O. Box 3444, Road Town, Tortola, British Virgin Islands; and

WHEREAS on September 30, 2010, the Commercial Division of the High Court of Justice (the "BVI Court") issued an order directing that: (i) TERC be wound up by the BVI Court (the "BVI Liquidation") in accordance with the provisions of the Insolvency Act of 2003 of the British Virgin Islands (the "2003 Act"); and (ii) appointing Casey McDonald, Bob Yap Cheng Ghee and Patrick Cowley, as Joint Liquidators of TERC (the "Liquidators"); and

WHEREAS on October 29, 2010, the BVI Court entered an order authorizing the Liquidators to petition the Courts of the United States of America and the United Kingdom for recognition of the BVI Liquidation; and

WHEREAS the Liquidators have determined that it is in the best interests of TERC, its estate, its creditors and its interest holders to file a proceeding for recognition of the BVI Liquidation as a foreign main or non-main proceeding under chapter 15 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") and to seek any additional relief from the United States Bankruptcy Court that may be beneficial to the administration of the BVI Liquidation (a "Chapter 15 Proceeding"); and

WHEREAS the Liquidators have retained United States counsel and are in the process of preparing and filing various declarations, documents, motions, applications and other legal documents in connection with the Chapter 15 Proceeding.

NOW THEREFORE, be it resolved that:

1. The Liquidators hereby direct their U.S. counsel, Holland & Knight LLP, to commence the Chapter 15 Proceeding and to take such actions as may be necessary to represent the interests of TERC and the Joint Liquidators in connection with such Proceeding.

2. The Liquidators and each of them are authorized to execute any and all declarations, documents, motions, applications and other legal documents in connection with the Chapter 15 Proceeding.

3. The Liquidators and each of them is authorized to take all such actions as may be required in connection with the Chapter 15 Proceeding.

4. The Liquidators and each of them is a duly authorized representative and signatory for all documents to be filed on behalf of TERC in connection with the Chapter 15 Proceeding.

Dated: November 19, 2010

_____
Casey McDonald
As a Joint Liquidator of Transfield ER Cape Limited (BVI)

_____
Bob Yap Cheng Ghee
As a Joint Liquidator of Transfield ER Cape Limited (BVI)

_____
Patrick Cowley
As a Joint Liquidator of Transfield ER Cape Limited (BVI)

#9913256_v1