UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
: 
In re: : Chapter 15
:
TRANSFIELD ER CAPE LIMITED (BVI), : Case No. 10-16270 (MG)
:
      Debtor in a :
      Foreign Proceeding. :
:
:
------------------------------------------------------x

## SECOND DECLARATION OF CASEY MCDONALD PURSUANT TO 11 U.S.C. § 1515 IN SUPPORT OF PETITION FOR ENTRY OF AN ORDER RECOGNIZING FOREIGN PROCEEDING UNDER CHAPTER 15 AND GRANTING FURTHER RELIEF

    I, CASEY MCDONALD, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

    1.    I am one of the joint liquidators (the "Joint Liquidators" or "Petitioners") of Transfield ER Cape Limited (BVI) ("TERC" or the "Foreign Debtor"), a company undergoing liquidation before the Commercial Division of the High Court of Justice (the "BVI Court"), case number BVIHCV2010/21 (the "BVI Liquidation"), pursuant to the Insolvency Act of 2003 of the British Virgin Islands (the "2003 Act").

    2.    I respectfully submit this declaration in further support of the Joint Liquidators' petition seeking recognition of the BVI Liquidation pursuant to 11 U.S.C. §1517(b)(1) or (2) as a foreign main or foreign nonmain proceeding and for further relief. I incorporate by reference my prior Declaration dated November 19, 2010 and submitted with the Petition in this case.

1

3. I am a director of KPMG (BVI) Limited resident in the British Virgin Islands, and I am duly authorized to make this declaration on behalf of the Joint Liquidators of TERC.

4. KPMG is an international accounting firm with offices throughout the world and has substantial experience in accounting and insolvency matters. Unless otherwise indicated, all statements contained herein are true and based upon personal knowledge or my review of relevant documents.

5. I am familiar with the Model Law on Cross-Border Insolvency, adopted by the United Nations Commission on International Trade Law (UNCITRAL), and approved by a resolution of the United Nations General Assembly on 15 December 1997 (the "Model Law").

6. I am also familiar with the Cross Border Insolvency Regulations of 2006 (the "2006 Regulations"), which gives effect to the Model Law in Great Britain, and Part XVIII of the 2003 Act, which gives effect to the Model Law in the BVI. I understand that the 2006 Regulations, Part XVIII of the 2003 Act, and Chapter 15 of the U.S. Bankruptcy Code are all based upon the substance of the Model Law.

**TERC's Business and Events Leading to Liquidation**

7. TERC was incorporated under the laws of the British Virgin Islands on May 22, 2003. TERC is a time-charter operator of bulk cargo ships and was a major player in the world-wide transportation of bulk commodities such as iron, coal and steel. In 2007, during the height of the global commodities boom, TERC maintained in excess of 200 vessels under charter.

8. In 2008, the market for transportation of bulk cargo suffered a dramatic collapse as a result of the global economic downturn. TERC is now insolvent on a cash flow and balance sheet basis.

9. TERC's primary assets are claims against third parties, bank balances in the BVI under the control of the Petitioners, rights under charter parties with third parties expected to generate approximately $33 million in profits through 2013, and funds in the United States.

10. Based on my review of TERC's contracts, I am aware that TERC consistently identified itself as a company organized under and subject to the laws of the BVIs. Examples of TERC's contracts were attached as exhibits to my first Declaration and filed with the Court.

**The BVI Liquidation**

11. As noted in my first Declaration and in the Petition, on September 30, 2010, the BVI Court issued an order directing that (i) TERC would be wound up by the BVI Court in accordance with the provisions of the 2003 Act, and (ii) appointing Bob Yap Cheng Ghee of KPMG Singapore, Patrick Cowley of KPMG Hong Kong, and myself, as Joint Liquidators of TERC (the "Liquidation Order").

12. Pursuant to the 2003 Act, court-appointed liquidators - such as myself - are officers of the BVI Court. Therefore, I make this declaration as an officer of the BVI Court, and request an extension of comity for the benefit of all TERC creditors, whose interests I represent.

13. The BVI Insolvency Act of 2003, under which the BVI Liquidation is proceeding, is a law specifically concerned with the liquidation of an insolvent debtor's

assets and the equitable distribution of the proceeds of such assets to the debtor's creditors, who are provided with notice of the proceedings and the opportunity to submit claims and otherwise participate in the proceedings. The 2003 Act recognizes priorities of creditors and claims, including the priority of a secured creditor with respect to its collateral.

14. The BVI Liquidation and our work as Joint Liquidators are subject to the supervision and overall control of the BVI Court. In addition, the TERC creditors have elected a five member creditors' committee, which serves as another point of oversight and communication between the Joint Liquidators and TERC's creditors.

15. I believe that the BVI Liquidation proceedings are fair and equitable. All creditors have an opportunity to be heard by the BVI Court. I also am aware of at least three other U.S. Courts have recognized BVI liquidations as foreign main or non main proceedings in the past two years. These cases include *In re British American Isle of Venice (BVI), Ltd.*, Case No. 10-21627, 2010 WL 5209232 (Bankr. S.D. Fla. Dec. 23, 2010), for which debtor I serve as the court appointed liquidator.

16. As noted above, TERC was an international shipping company with creditors located throughout the world. To avoid delays and inefficiencies resulting from the substantial time difference between the BVIs and Asia, where many of TERC's creditors are located, Patrick Cowley, who is based in Hong Kong, and Bob Yap Cheng Ghee, based in Singapore, act in furtherance of the BVI Liquidation from those locales.

**Petitioners' Activities**

17. Since being appointed, the Joint Liquidators have displaced the TERC Board of Directors and have been in full and exclusive control of TERC for the benefit of TERC's creditors.

18. Also, the "nerve center" of activity on behalf of TERC and its estate is in the BVIs.

19. Shortly after our appointment, the Joint Liquidators sent out notice of the liquidation and the appointment of the Joint Liquidators to creditors as well as to the BVI Registrar of Corporate Affairs. I also have prepared and sent out two reports to creditors, describing the activities of the Joint Liquidators to date.

20. Also, I arranged for notices of the appointment of the Joint Liquidators to be published in the BVIs and to be sent to each bank in the BVIs to determine whether there were any local accounts. I also arranged for notice of the Joint Liquidators' appointment to be sent to HSBC in Hong Kong and DBS in Singapore where the Joint Liquidators were advised that TERC previously maintained accounts. In the case of the HSBC account, the account was closed and all funds were transferred to a new account I set up in the BVIs for purposes of the BVI Liquidation. The BVI Liquidation bank account is under the control of the Joint Liquidators. The approximately $5,000 held in the DBS account in Singapore also is under the Joint Liquidators' control.

21. The Joint Liquidators have arranged for all payments to entities from which TERC charters vessels and payments received from entities to which the vessels are chartered flow through the BVI account, which is under the Joint Liquidators'

exclusive control. With respect to the DBS account, the balance is under US $5,000 and will remain in Singapore for the time being.

22. The Joint Liquidators' tasks include soliciting and determining claims, as well as realizing the company's assets (with a view to maximizing returns for creditors). We have received a number of claims, and expect to investigate and determine each of them. To date, the Joint Liquidators have focused on claims related to arbitrations that were already under way prior to their appointment, and have required us to continue with settlement discussions or the arbitrations themselves. In due course, we will go through all claims and decide whether to admit or reject.

23. One of my staff members chaired the First Meeting of the creditors of TERC in the BVI on October 20, 2010. Twenty-one creditors attended, either personally or by proxy. Their claims against TERC were admitted for voting purposes in the total amount of US $339,899,550.

24. At the initial creditors meeting, the creditors resolved by majority vote to appoint a creditors' committee. The five creditors who were elected to the Creditors' Committee are:

    a) China Saturn Shipping Inc.

    b) Cosco Bulk Carrier Co., Ltd.

    c) IETC / Tai Ping Insurance Co., Ltd.

    d) Mitsui O.S.K. Lines, Ltd.

    e) Shagang Shipping Co., Ltd.

25. Since the initial meeting, the Joint Liquidators have been in contact with the members of the Creditors' Committee regularly.

26. In addition to soliciting and investigating claims, calling and conducting creditors' meetings, and setting up a new bank account in the BVI for purposes of the BVI Liquidation, the liquidators have undertaken many other activities in the BVI on behalf of TERC since their appointment. These activities include:

    a) Filing applications for permission and obtaining authority from the BVI Court to:

        i. Carry on the business of TERC with respect to three profitable charters for which the Company had agreements to charter a vessel for less than it was able to sub-charter it for;

        ii. Enter into a settlement in respect of the arbitration relating to the sinking of the vessel Alexandros T;

        iii. Continue arbitration in respect of the vessel Captain Costas;

        iv. Carry on TERC's business with respect to a profitable contract of affreightment; and

        v. Commence proceedings in the UK and US for recognition of the BVI Liquidation under applicable English and US insolvency law;

    b) Liaising with BVI counsel in respect of case strategy to develop further applications, of which two are imminent, one to continue a further arbitration in respect of the vessel Mineral Libin, and another to discontinue two of the Company's BVI appeals;

    c) Liaising with counsel in the BVI and London in relation to reviewing and finalizing a settlement agreement for the parties to the Alexandros T arbitration;

    d) Liaising with US Counsel and creditors' counsel with respect to funds held pursuant to a Rule B attachment in New York with respect to possible settlement;

    e) Dealing with creditors' queries in relation to the liquidation of TERC and the proofs of claims;

    f) Negotiating with European based counsel for the counterparties to certain of TERC's ongoing charters;

g) Monitoring and overseeing the activities of TERC's agent in Hong Kong in relation to the revenue and expenses deriving from the ongoing charters;

h) Communicating and providing regular updates with the Hong Kong and Singapore based teams to ensure the effective coordination of the TERC's liquidation;

i) Reviewing contracts entered into by TERC prior to the appointment of the liquidators;

j) Filing notices of disclaimer with the BVI Court to disclaim TERC's unprofitable contracts and providing notice to the appropriate parties; and

k) Liaising with counsel in the BVI and London in respect of making a successful application to the UK Court for recognition of the BVI Liquidation in the UK.

27. Currently, the Joint Liquidators are operating TERC's remaining profitable charters and contracts of affreightment with the assistance of TERC's pre-liquidation agent in Hong Kong. Correspondence is only released by the agent with the express approval of the Joint Liquidators or their staff, in furtherance of the aims of the BVI Liquidation.

28. As of today, a total of 32 proofs of claims have been received from the creditors of TERC based in: Belgium (1), BVI (1), China (3), France (1), Germany (3), Greece (1), Hong Kong (4), Italy (1) Japan (2), Korea (3), Liberia (1), Switzerland (8), and the UK (3). We expect to receive additional proofs of claim over the coming months.

29. Based on my review of TERC's books and records and my substantial communications with creditors thus far, it is clear to me that while it was operating, TERC consistently represented itself to its counterparties as being a BVI company and this fact was clearly understood. To that end, I am aware that several creditors submitted letters to the BVI Court in support of the liquidation taking place in BVI and one even submitted papers in support of recognition to this Court.

30. The BVI Liquidation actually was commenced by one of TERC's creditors, and no creditors have filed papers opposing or disputing the BVIs as the locus of TERC's liquidation efforts.

31. The BVI Liquidation was recognized by the UK court under the analogue of chapter 15, and is the locus of the global effort to realize TERC's assets, ongoing business and substantial contractual and legal rights.

32. I believe that the United States' failure to recognize the BVI Liquidation would undermine this global endeavor.

**Chapter 15 Requirements**

33. I believe that all of the procedural requirements for recognition under chapter 15 are met here. In particular, I am aware that certified copies of the Liquidation Order, a statement describing all other proceedings involving TERC and a statement including the information required under this Court's local rules was submitted together with the Petition. All documents submitted are in English.

34. I also believe that all of the substantive requirements for recognition as a foreign main proceeding have been met. As noted above, the BVI Liquidation is being conducted under the supervision of the BVI Court, pursuant to the 2003 Act, which is a law concerned with insolvency and the adjustment of debt. In addition, the BVI Liquidation is a collective judicial proceeding, in that all creditors of TERC are given notice and an opportunity to submit claims and participate in the proceedings. My fellow Joint Liquidators and I are persons appointed by the BVI Court to administer the BVI Liquidation and to serve as representatives of TERC. For this reason, I submit that the

Joint Liquidators are foreign representatives and that the BVI Liquidation is a foreign proceeding within the meaning of chapter 15.

35. Also as detailed above, the BVI Liquidation is pending in the place where TERC was formed and where its center of main interests is located. By order entered October 29, 2010, the BVI Court authorized Petitioners to file this Petition as well as to seek recognition of the BVI Liquidation under applicable United Kingdom law. On Monday, November 1, 2010, the United Kingdom High Court of Justice, Chancery Division, Companies Court issued an order recognizing the BVI Liquidation as a foreign main proceeding in accordance with 206 Regulations. I respectfully submit that the Court should do likewise here.

**Funds Held in Escrow**

36. As discussed in the Petition, TERC is the beneficial owner of a bank balance in the amount of $866,377.36, which sum is held in an account at J.P. Morgan Chase Bank, N.A. in New York (the "Funds").

37. As the Court may be aware, Judge Rakoff issued a written ruling on December 2, 2010, confirming the vacatur of that Court's prior *ex parte* order of attachment concerning the Funds and dismissing the related complaint in the action styled *TMT Bulk Co. Ltd. v. Transfield ER Cape Ltd., et ano*, No. 10- CV-5110 (S.D.N.Y.) (JSR). I understand that, as a result, there presently are no attachments, liens or other legal restraints upon the Funds.

38. Accordingly, I respectfully request on behalf of the Joint Liquidators that this Court appoint as the exclusive representatives of TERC with respect to the Funds and all other assets of TERC in the United States, and entrust to the Joint Liquidators the

Funds and all other TERC assets in the United States for administration and distribution in connection with the BVI Liquidation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  Road Town, British Virgin Islands
         January 11, 2011

                                    /s/ Casey McDonald
                                    CASEY MCDONALD

#10031566_v1